IN THE MATTER OF JOHN C KURZAWA, JR

Docket No. 43901. Submitted November 13, 1979, at Detroit.—Decided
February 6, 1980.

John Kurzawa, Sr., and Frances Kurzawa filed a petition in the
Lenawee Probate Court alleging that their son John Casmere
Kurzawa, Jr. (Cass), was without proper custody and guardian-
ship and asking that he be placed temporarily in a foster home.
The court so ordered. Later hearings resulted in Cass's place-
ment at the Yorkwoods Center for Psychological Evaluation
and then in the home of his parents with outpatient treatment
at the Yorkwoods Center. Finally, a Children's Services case-
worker filed a petition for rehearing to determine whether the
rights of the parents should be terminated. A hearing was held
and the court ordered termination, holding Cass to be a child
with emotional difficulties for which his parents were unable to
provide proper guidance. Mr. and Mrs. Kurzawa appealed to
the Lenawee Circuit Court. Rex B. Martin, J., affirmed. The
Kurzawas appeal by leave granted. Held:

A parent's right to the custody of his child is an element of
"liberty" guaranteed by the Fifth and Fourteenth Amendments
to the United States Constitution. The statutory authority to
terminate parental rights by making a child a permanent ward
of the court when the child is "deprived of emotional well-
being" must be interpreted consistently with the other statu-
tory bases of jurisdiction and the constitutional rights of a
parent to the custody of his child and cannot be employed as a
catch-all jurisdictional grant. Probate court jurisdiction to ter-
minate the custodial rights of parents over children must be
based on parental neglect, not delinquency, and the state bears
the burden of proving the need for the court's exercising
jurisdiction by clear and convincing evidence. Evidence of
parental neglect was wholly lacking.

Reversed and Cass ordered returned to his parents.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 42 Am Jur 2d, Infants §§ 28, 29.
  59 Am Jur 2d, Parent and Child §§ 27, 39, 40.
[2, 3] 59 Am Jur 2d, Parent and Child §§ 25, 42.

1. PARENT AND CHILD — JURISDICTION — TERMINATION OF CUSTODIAL
   RIGHTS — STATUTES.

   Probate court jurisdiction to terminate the custodial rights of
   parents over children must be based on parental neglect, not
   delinquency, and the state bears the burden of proving the
   need for the court's exercising jurisdiction by clear and con-
   vincing evidence (MCL 712A.2[b]; MSA 27.3178[598.2(b)]).

2. PARENT AND CHILD — CUSTODY — CONSTITUTIONAL LAW.

   A parent's right to the custody of his child is an element of
   "liberty" guaranteed by the Fifth and Fourteenth Amendments
   to the United States Constitution (US Const, Am V, XIV).

3. PARENT AND CHILD — CUSTODY — TERMINATION OF CUSTODIAL
   RIGHTS — STATUTES — DEPRIVATION OF EMOTIONAL WELL-BE-
   ING.

   The statutory authority to terminate parental rights by making a
   child a permanent ward of the court when the child is "de-
   prived of emotional well-being" must be interpreted consist-
   ently with the other statutory bases of jurisdiction and the
   constitutional rights of a parent to the custody of his child and
   cannot be employed as a catch-all jurisdictional grant (MCL
   712A.2[b]; MSA 27.3178[598.2(b)]).

*Martin J. Beres,* for appellants.

Before: BRONSON, P.J., and D. C. RILEY and E. A.
QUINNELL,* JJ.

E. A. QUINNELL, J. This case comes to us after a
series of hearings culminating in the termination
of the parental rights of appellants John Kurzawa,
Sr. and Frances Kurzawa in their son John Cas-
mere Kurzawa, Jr. ("Cass") by order of the Pro-
bate Court for Lenawee County on April 5, 1978.
The Circuit Court for Lenawee County affirmed
the same without conducting a trial *de novo.* We
granted leave to appeal.

Cass, born February 27, 1970, is the only child of
the Kurzawas. Mr. Kurzawa is a teacher of the
blind and is himself totally blind and Mrs. Kur-

* Circuit judge, sitting on the Court of Appeals by assignment.

zawa has had some vision impairment, a condition that has apparently improved while this case has been in the courts. Mr. Kurzawa's handicap has been a factor of some unknown significance.

The matter first came to the attention of the probate court when the Kurzawas signed the following petition:

"* * * [Cass] who is without proper custody and guardianship, to-wit: John Kurzawa, Jr., is not controlled by his parents. On Tuesday, 6/17/75, he hit his mother in the head with a rock. He also threw a butcher knife at her on 6/17/75. On 6/18/75, John, Jr., hit a neighbor girl in the head with a rock. He also tried to stab his mother on that day. In April, 1975, John, Jr., attempted to burn the neighbor's barn. During this same day he threw baby rabbits out and watched them die, threw a duck into a German shepherd dog's pen and watched the dog kill the duck and was continually hurting neighbor children.

"John Kurzawa, Sr., is totally blind and unable to administer effective discipline to the boy. Frances Kurzawa indicates she cannot control the child. Both parents request temporary placement in foster care and this is supported by Mrs. Brenda Pincheon, therapist at the mental health unit."

The factual allegations in this initial petition by the Kurzawas clearly refer to the delinquency provisions of the probate code, MCL 712A.2(a); MSA 27.3178(598.2)(a), and not the neglect portions, MCL 712A.2(b); MSA 27.3178(598.2)(b). Apparently some sort of hearing was conducted on June 19, 1975, but no transcript of this proceeding exists. In any event, the Kurzawas were in probate court on July 25, 1975. The Kurzawas waived counsel and a guardian *ad litem* appeared in behalf of Cass. The court informed the Kurzawas that they could admit or deny the allegations of

the petition, a petition they themselves had initiated. Mr. Kurzawa's response was enigmatic. He explained: "The charges aren't true, of course, we made them ourselves because we had gone through that experience", but he later positively responded when the court asked him if the petition was true. The Kurzawas maintained throughout the later proceedings that they initiated the petition in order to receive temporary assistance from the Department of Social Services (DSS) while moving into a new home in Hillsdale County. The Kurzawas believed Cass was being improperly influenced by their neighbor's children and that his behavior would improve with a more salubrious environment and thought DSS could provide a temporary home for the child during their brief period of dislocation. Mr. Kurzawa, however, did not clearly explain this at the hearing. The court made Cass a temporary ward of the court and ordered him into foster care.

The court conducted a review hearing, MCL 712A.19; MSA 27.3178(598.19), on January 8, 1976. Since the previous hearing, Cass had run into difficulties with his foster parents and had been placed in the Yorkwoods Center for Psychological Evaluation in Ypsilanti by an *ex parte* order on August 16, 1975. The Kurzawas, in the meantime, had moved into a new home in Jerome, Michigan, which is in Hillsdale County. The Kurzawas arranged for Cass to start public school in Jerome. Frances Rich, a social worker from the Lenawee County DSS, recommended that Cass be returned to his parents and continue treatment at Yorkwoods on an outpatient basis. Ms. Rich noted that there were no particular behavioral problems with Cass. Upon Ms. Rich's recommendation, the court ordered the child continued as a temporary ward

of the court and further ordered that he be returned home on a trial basis.

The next review hearing was held July 13, 1976. The Kurzawas were the only witnesses and testified that Cass's behavior had improved markedly since his return home, that he was doing well in school, and that there were no particular problems with the child. The court ordered the continued wardship of the boy in his parents' home.

It is somewhat difficult to understand what happened next. Joan Mueller, a DSS social worker, filed the following petition on August 6, 1976:

"John 'Cass' Kurzawa, Jr. is not able at this time to function in the home of Mr. and Mrs. John C. Kurzawa, parents. Mother is having problems controlling John's behavior. On 8-4-76 conference with Mrs. Kurzawa, I was told that John had taken a puppy's leg and put it in a spinning bicycle tire. He had also taken stones, etc., and put them in the gas tank of his mother's car. I had a conference with Sue Cooley, Yorkwoods Center, on 8-4-76 and 8-6-76. She and I both believe it is in John's best interest that he be removed from the family home and placed temporarily in foster care."

The petition seems to have been granted *ex parte* since Cass was already in the Children's Psychiatric Hospital (CPH)[1] in Ann Arbor when the hearing was conducted on August 17, 1976. Mr. Kurzawa, now represented by counsel, was the only witness at that hearing. He denied in part and explained the allegations of misbehavior on Cass's part, allegations stemming from a discussion between Mrs. Kurzawa and Ms. Mueller. He explained that he had contacted Ms. Mueller through the auspices of a Yorkwoods social

---

[1] No issue has been raised as to compliance with the Mental Health Code, MCL 330.1001 *et seq.;* MSA 14.800(1) *et seq.,* or whether such compliance is required.

worker, Susan Cooley, only to have Cass placed in a summer camp through DSS. Somehow, the petition resulted. Mr. Kurzawa did, however, testify that he would cooperate with the court and with CPH. Ms. Mueller, the petitioner, did not testify.

The Kurzawas petitioned the court for the return of their child on February 22, 1977. The rehearing was conducted before a different probate judge on March 30, 1977. The guardian *ad litem* functioned as prosecutor and the Kurzawas were represented by counsel. The guardian *ad litem* presented testimony from Ms. Mueller, Dr. Purza Onate, a resident in psychiatry from CPH, and Dr. Kay Tooley, Dr. Onate's supervisor. Their testimony was to the effect that Cass was an aggressive child in need of close supervision and psychotherapy. Dr. Onate had met the Kurzawas on only two occasions while Dr. Tooley had observed neither the parents nor the child. Susan Cooley testified on behalf of the Kurzawas. She had been Cass's social worker while she was at Yorkwoods and had supervised his case until his commitment to CPH. She recommended that he be returned home. In her opinion, the Kurzawas were capable of rearing the child but were in need of some counseling. Robert Gaberdiel, the principal of the school Cass had attended in Jerome, testified that the child had behaved well in school and had no unusual problems. Mr. Kurzawa testified that he was willing to cooperate with the school and work with Ms. Cooley for the benefit of his child. On the basis of the testimony, the court reached the following conclusion:

"Now, it appears obvious that this Court is called upon pretty much to make a medical decision here as opposed to a judicial or legal decision *because what is best for Cass is the—is what this Court is all about.* I'm

confronted with the dispute between people, both of whom are sincere in their professional opinions. By that I'm referring to the doctors who have testified and also to Miss Cooley. *I'm also impressed with the fact that Mr. and Mrs. Kurzawa are—they love their child.* They feel that there's some—the Court is saying something here, somebody's *saying something here about their ability as parents and that's not what's at issue here at all. The issue is what is good for Cass.* THis [sic] Court finds Cass to be a sick young boy, and that he needs some help. THat [sic] he's mentally disturbed, and that if we do not do something for him and if the treatment is not continuous and if he's not closely supervised in an institutional atmosphere at least at this time, that perhaps we'll loose [sic] what we have accomplished this far. Based on that, it is the judgment of this Court in view of all of the evidence and *all of the good intentions on everybody's part* that Cass will be continued at the Children's Psychiatric Hospital. Therefore, it is hereby ordered, that John Casmere Kurzawa, Jr. be and is by this order made a temporary ward of the Court and is placed at the Children's Psychiatric Hospital under the supervision of the State Department of Social Services." (Emphasis added.)

The Kurzawas obtained new counsel. They moved for a change of venue on September 12, 1977, which motion was denied.

On November 30, 1977, Ms. Mueller filed the following petition for the termination of the Kurzawas' parental rights:

"John Kurzawa, Jr., was placed in foster care on September 28th, 1977, and placed there upon recommendation of Dr. Kay Tooley, Psychologist, Children's Psychiatric Hospital, Ann Arbor, Michigan. Mr. and Mrs. John Kurzawa have had agency intervention since 1974. John 'Cass' Kurzawa, Jr., has been removed from the home of Mr. and Mrs. Kurzawa on 3 different occasions. Based on the background information which necessitated John's removal from his parent's home and the present recommendation of Dr. Kay Tooley that the

child not be returned home, I believe that a decision as to John Kurzawa's permanent placement is essential to his present and future adjustment. I believe the unanswered question of whether he will returned *[sic]* to his parents or not is producing anxiety for him which hinders his psychotherapy. I wish to petition the Court for a rehearing to determine if the parental rights of Mr. and Mrs. John Kurzawa, parents of John Kurzawa, Jr., should be terminated, and that the parents be warned that future hearings could result in this decision."

As was true of previous petitions, this petition did not allege any neglect by the Kurzawas.

After an adjournment so that a prosecutor would represent the county rather than having the guardian *ad litem* prosecute the case, the termination hearing was held before a visiting probate judge on March 29, 1978. After taking testimony from both sides, as well as that of an independent psychiatrist, the court decided on April 5 to terminate the rights of the Kurzawas. The court found that Cass was a child with emotional difficulties and that the Kurzawas were unable to provide him with the proper guidance. Although the court noted their love for the child, it held them to be "emotionally neglectful to their children *[sic]* in that they cannot see that he has done anything wrong or they merely pass everything that happens or that he does off as an accident". On appeal to the circuit court, the order was affirmed.

The record does not indicate where Cass has been placed during the pendency of the appellate process.

The Kurzawas raise several issues on appeal. The most fundamental of these is whether the probate court exceeded its jurisdiction in ordering Cass into its temporary wardship and then terminating the rights of his parents. Our review of the

record and the applicable law convinces us that the court did exceed its jurisdiction.

The petition to invoke the court's jurisdiction "shall set forth plainly the facts which bring said child within the provisions of this chapter * * *" MCL 712A.11; MSA 27.3178(598.11). Jurisdiction under the statute must be based on evidence of parental neglect, not on delinquency. *Fritts v Krugh,* 354 Mich 97; 92 NW2d 604 (1958), *In the Matter of LaFlure,* 48 Mich App 377; 210 NW2d 482 (1973). The state carries the burden of proving the need for the court's exercising jurisdiction by clear and convincing evidence. *In the Matter of LaFlure, supra,* 383, JCR 8.3(b).

The probate court's jurisdiction over neglected children is set forth in MCL 712A.2; MSA 27.3178(598.2):

"(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county

"(1) Whose parent or other person legally responsible for the care and maintenance of such child, when able to do so, neglects or refuses to provide proper or necessary support, education as required by law, medical, surgical or other care necessary for his health, morals, or who is deprived of emotional well-being, or who is abandoned by his parents, guardian or other custodian, or who is otherwise without proper custody or guardianship; or

"(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality or depravity on the part of a parent, guardian or other custodian, is an unfit place for such child to live in, or whose mother is unmarried and without adequate provision for care and support."

The only colorable basis for probate court jurisdiction to terminate parental rights in the instant case is the language conferring jurisdiction over a

child "who is deprived of emotional well-being", MCL 712A.2(b)(1); MSA 27.3178(598.2)(b)(1), by the alleged inability of the Kurzawas to control their child's behavior. There were absolutely no allegations of physical neglect or deprivation. Nor did anyone ever claim the Kurzawas did not love their child or were not devoted parents. The petition alleged an inability on the part of the Kurzawas to discipline Cass.

The statutory authority of the probate court to make a child a permanent ward of the court, thereby terminating parental rights, is found in § 19a, MCL 712A.19a; MSA 27.3178(598.19a). That section provides that such action can be taken if the child has been deserted or abandoned by his parents for more than six months, the parent is unable to provide proper care for a period in excess of two years because of mental illness without a reasonable expectation of recovery, the parent faces incarceration for more than two years, the child has been in foster care in the temporary custody of the court on the basis of a neglect petition for a period of at least two years or the parent is unable to provide a fit home by reason of neglect. The term "neglect" can be assumed to mean neglect as defined in § 2(b), previously quoted, which in turn refers to "emotional well-being", the deprivation of which can be characterized as neglect.

The statutory phrase "deprived of emotional well-being" must be interpreted consistently with the other statutory bases of jurisdiction and with the constitutional rights of a parent to the custody of his or her child. A parent's right to the custody of his or her child is an element of "liberty" guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution. *Reist v*

*Bay Circuit Judge,* 396 Mich 326, 339-346; 241 NW2d 55 (1976), *In the Matter of LaFlure, supra,* 385. A substantial deprivation of a constitutionally protected right cannot be wrought by imparting overgeneralized meaning to vague statutory language. Consistent with these principles, the phrase "deprived of emotional well-being" cannot be employed as a catch-all jurisdictional grant. The phrase must be considered in its context to require proof of seriously neglectful parents.

None of the petitions on file even hint at the type of neglect contemplated by the statute as authorizing the termination of parental rights. Further, even if one or more of the petitions could be considered sufficient to authorize that kind of inquiry, the evidence is clearly insufficient to establish, clearly and convincingly, that the state has proved that termination of parental rights was warranted. Not until the hearing of March 30, 1977, nearly two years after the court first ordered Cass into its custody, did any witness testify that the Kurzawas were unable to discipline their child. Even at that stage, the evidence was insufficient to support a finding of emotional neglect. Joan Mueller, a social worker, testified to the child's behavioral difficulties. She further testified that the Kurzawas did not cooperate with her, which could hardly provide a basis for finding neglect, in that the parents had cooperated with others. Dr. Onate, the resident in psychiatry, had met the Kurzawas on only two occasions while Dr. Tooley had never even met them. While their testimony was relevant to Cass's "emotional well-being", it added little or nothing of substance to the fundamental question of whether the Kurzawas were so neglectful of Cass's emotional welfare as to permit state interference with their fundamental right to raise

their child. At the conclusion of the hearing, the court explained that it was forced to make essentially a "medical decision here as opposed to a judicial or legal decision because what is best for Cass is what the—is what this Court is all about", and mistakenly noted that the ability of the Kurzawas as parents was not at issue. The ability of the Kurzawas as parents, however, was precisely the issue. *In re Mathers,* 371 Mich 516, 529-531; 124 NW2d 878 (1963), *Fritts v Krugh, supra,* 115.

Accordingly, we hold that the probate court erred in assuming jurisdiction and that the proceedings were void *ab initio.* We order Cass returned to the custody of his parents.

Costs to appellants.

All concurred.