John C. KURZAWA, Sr., and Frances Kurzawa, Individually and as Next Friends of John C. Kurzawa, Jr., Plaintiffs,

v.

Joan MUELLER; Roger Henricks; Clarke F. Baldwin; Purza Onate, M.D.; Kay Tooley, Ph.D.; Angela Wallenbrock, M.D.; and John Dempsey, Director, Michigan Department of Social Services, Defendants.

No. 82-60076.

United States District Court,
E. D. Michigan, S. D.

Aug. 30, 1982.

William H. Goodman, Elizabeth Gleicher, Goodman, Eden, Millender & Bedrosian, Detroit, Mich., for plaintiffs.

Brian Einhorn, Southfield, Mich., Erica Weiss Marsden, Lansing, Mich., William J. Lynch and Robert P. Siemion, Gerald V. Padilla, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on defendant Wallenbrock's Motion for Summary Judgment, and defendants Mueller, Henricks and Dempsey's Motion to Dismiss. For the reasons that follow, the motions are granted in part and denied in part.

This civil rights action was commenced in this court following extended litigation in the Lenawee County Probate and Circuit Courts, and in the Michigan Court of Appeals. The court adopts the following statement of facts from the decision in *In Re Kurzawa*, 95 Mich.App. 346, 290 N.W.2d 431 (1980). The particulars in which the allegations of the complaint differ from the Court of Appeals' statement of facts are explained in footnotes.

This case comes to us after a series of hearings culminating in the termination of the parental rights of appellants John Kurzawa, Sr. and Frances Kurzawa in their son John Casmere Kurzawa, Jr. ("Cass") by order of the Probate Court for Lenawee County on April 5, 1978. The Circuit Court for Lenawee County affirmed the same without conducting a trial de novo. We granted leave to appeal.

Cass, born February 27, 1970, is the only child of the Kurzawas. Mr. Kurzawa is a teacher of the blind and is himself totally blind and Mrs. Kurzawa has had some vision impairment, a condition that has apparently improved while this case has been in the courts. Mr. Kurzawa's handicap has been a factor of some unknown significance.

The matter first came to the attention of the probate court when the Kurzawas signed the following petition:

"[Cass] who is without proper custody and guardianship, to-wit: John Kurzawa, Jr., is not controlled by his parents. On Tuesday, 6/17/75, he hit his mother in the head with a rock. He also threw a butcher knife at her on 6/17/75. On 6/18/75, John, Jr., hit a neighbor girl in the head with a rock. He also tried to stab his mother on that day. In April, 1975, John, Jr., attempted to burn the neighbor's barn. During this same day he threw baby rabbits out and watched them die, threw a duck into a German shepherd dog's pen and watched the dog kill the duck and was continually hurting neighbor children.

John Kurzawa, Sr., is totally blind and unable to administer effective discipline to the boy. Frances Kurzawa indicates she cannot control the child. Both parents request temporary placement in foster care and this is supported by Mrs. Brenda Pincheon, therapist at the mental health unit." [1]

\* \* \* \* \* \* \* \*

Apparently some sort of hearing was conducted on June 19, 1975, but no transcript of this proceeding exists. In any event, the Kurzawas were in probate court on July 25, 1975. The Kurzawas waived counsel and a guardian *ad litem* appeared in behalf of Cass. The court informed the Kurzawas that they could admit or deny the allegations of the petition they themselves had initiated. Mr. Kurzawa's response was enigmatic. He explained: "The charges aren't true, of course, we made them ourselves because we had gone through that experience", but he later positively responded when the court asked him if the petition was true. The Kurzawas maintained throughout the later proceedings that they initiated the petition in order to receive temporary assistance from the Department of Social Services (DSS) while moving into a new home in Hillsdale County. The Kurzawas believed Cass was being improperly influenced by their neighbor's children and that his behavior would improve with a more salubrious environment and thought DSS could provide a temporary home for the child during their brief period of dislocation. Mr. Kurzawa, however, did not clearly explain this at the hearing. The court made Cass a temporary ward of the court and ordered him into foster care.

**1.** The complaint alleges that plaintiff-parents requested from the Lenawee County D.S.S. a temporary placement in summer camp for Cass because they felt he was being adversely influenced by neighbor children. It goes on to allege that defendants Henricks and Mueller "translated" this request into a neglect petition which they then signed. The complaint does not suggest that the parents signed the neglect petition.

The court conducted a review hearing ... on January 8, 1976. Since the previous hearing, Cass had run into difficulties with his foster parents and had been placed in the Yorkwoods Center for Psychological Evaluation in Ypsilanti by an *ex parte* order on August 16, 1975. The Kurzawas, in the meantime, had moved into a new home in Jerome, Michigan, which is in Hillsdale County. The Kurzawas arranged for Cass to start public school in Jerome. Frances Rich, a social worker from the Lenawee County DSS, recommended that Cass be returned to his parents and continue treatment at Yorkwoods on an outpatient basis. Ms. Rich noted that there were no particular problems with Cass. Upon Ms. Rich's recommendation, the court ordered the child continued as a temporary ward of the court and further ordered that he be returned home on a trial basis.

The next review hearing was held July 13, 1976. The Kurzawas were the only witnesses and testified that Cass's behavior had improved markedly since his return home, that he was doing well in school, and that there were no particular problems with the child. The court ordered the continued wardship of the boy in his parents' home.

It is somewhat difficult to understand what happened next. Joan Mueller, a DSS social worker, filed the following petition on August 6, 1976:

"John 'Cass' Kurzawa, Jr. is not able at this time to function in the home of Mr. and Mrs. Kurzawa, parents. Mother is having problems controlling John's behavior. On 8–4–76 conference with Mrs. Kurzawa, I was told that John had taken a puppy's leg and put it in a spinning bicycle tire. He had also taken stones, etc., and put them in the gas tank of his mother's car. I had a con-ference with Sue Cooley, Yorkwoods Center, on 8–4–76 and 8–6–76. She and I both believe it is in John's best interest that he be removed from the family home and placed temporarily in foster care." [2]

The petition seems to have been granted *ex parte* since Cass was already in the Children's Psychiatric Hospital (CPH) in Ann Arbor when the hearing was conducted on August 17, 1976. Mr. Kurzawa, now represented by counsel, was the only witness at that hearing. He denied in part and explained the allegations of misbehavior on Cass's part, allegations stemming from a discussion between Mrs. Kurzawa and Ms. Mueller. He explained that he had contacted Ms. Mueller through the auspices of a Yorkwoods social worker, Susan Cooley, only to have Cass placed in a summer camp through DSS. Somehow, the petition resulted. Mr. Kurzawa did, however, testify that he would cooperate with the court and with CPH. Ms. Mueller, the petitioner, did not testify. [3] The Kurzawas petitioned the court for the return of their child on February 22, 1977. The rehearing was conducted before a different probate judge on March 30, 1977. The guardian *ad litem* functioned as prosecutor and the Kurzawas were represented by counsel. The guardian *ad litem* presented testimony from Ms. Mueller, Dr. Purza Onate, a resident in psychiatry from CPH, and Dr. Kay Tooley, Dr. Onate's supervisor. Their testimony was to the effect that Cass was an aggressive child in need of close supervision and psychotherapy. Dr. Onate had met the Kurzawas on only two occasions while Dr. Tooley had observed neither the parents nor the child. Susan Cooley testified on behalf of the Kurzawas. She had been Cass's social worker while she was at Yorkwoods and had supervised his

---

**2.** The complaint alleges that in July, 1976, the plaintiff-parents again approached the Lenawee County D.S.S. seeking a summer camp placement for Cass. The complaint alleges that defendant Mueller "translated" this request into a petition to remove Cass from his home and place him in foster care.

**3.** The complaint suggests that defendants Onate and Wallenbrock either testified at the August, 1976 hearing, or shortly thereafter recommended that Cass be placed in foster care.

case until his commitment to CPH. She recommended that he be returned home. In her opinion, the Kurzawas were capable of rearing the child but were in need of some counseling. Robert Gaberdiel, the principal of the school Cass had attended in Jerome, testified that the child had behaved well in school and had no unusual problems. Mr. Kurzawa testified that he was willing to cooperate with the school and work with Ms. Cooley for the benefit of his child. On the basis of the testimony, the court reached the following conclusion:

\* \* \* \* \* \*

"Therefore, it is hereby ordered, that John Casmere Kurzawa, Jr. be and is by this order made a temporary ward of the Court and is placed at the Children's Psychiatric Hospital under the supervision of the State Department of Social Services."

On November 30, 1977, Ms. Mueller filed the following petition for the termination of the Kurzawas' parental rights:

"John Kurzawa, Jr., was placed in foster care on September 28th, 1977, and placed there upon recommendation of Dr. Kay Tooley, Psychologist, Children's Psychiatric Hospital, Ann Arbor, Michigan. Mr. and Mrs. John Kurzawa have had agency intervention since 1974. John 'Cass' Kurzawa, Jr., has been removed from the home of Mr. and Mrs. Kurzawa on 3 different occasions. Based on the background information which necessitated John's removal from his parent's home and the present recommendation of Dr. Kay Tooley that the child not be returned home, I believe that a decision as to John Kurzawa's permanent placement is essential to his present and future adjustment. I believe the unanswered question of whether he will returned [sic] to his parents or not is producing anxiety for him which hinders his psychotherapy. I wish to petition the Court for a rehearing to determine if the parental rights of Mr. and Mrs. John Kurzawa, parents of John Kurzawa, Jr., should

be terminated, and that the parents be warned that future hearing could result in this decision."

As was true of previous petitions, this petition did not allege any neglect by the Kurzawas.

After an adjournment so that a prosecutor would represent the county rather than having the guardian *ad litem* prosecute the case, the termination hearing was held before a visiting probate judge on March 29, 1978.[4] After taking testimony from both sides, as well as that of an independent psychiatrist, the court decided on April 5 to terminate the rights of the Kurzawas. The court found that Cass was a child with emotional difficulties and that the Kurzawas were unable to provide him with the proper guidance. Although the court noted their love for the child, it held them to be "emotionally neglectful to their children [sic] in that they cannot see that he has done anything wrong or they merely pass everything that happens or that he does off as an accident". On appeal to the circuit court, the order was affirmed. 95 Mich.App. at 347–53, 290 N.W.2d at 432–35.

On these facts, the Court of Appeals held that the Lenawee County Probate Court had exceeded its jurisdiction and that the proceedings were void *ab initio*, as none of the petitions had ever alleged the type of neglect or emotional deprivation contemplated by the Michigan Child Protection statutes. Furthermore, the court held that even if the petitions had been sufficient, the "evidence [was] clearly insufficient to establish, clearly and convincingly, that the state ha[d] prove[n] that termination of parental rights was warranted." 95 Mich. App. at 356, 290 N.W.2d at 436.

On March 10, 1982, slightly more than two years after the Court of Appeals' ruling, John and Frances Kurzawa, for themselves and on behalf of their son, filed this action naming seven defendants: Mueller, Onate, Tooley, Roger Henricks, supervisor of the Lenawee County Protective Services

---

4. The complaint alleges that defendant Wallenbrock was appointed by the Probate Court in October, 1977 to conduct an independent psychiatric examination of Cass, and that she testified at the termination hearing.

division of the Michigan Department of Social Services, Clarke Baldwin, Cass Kurzawa's guardian ad litem, Angela Wallenbrock, a psychiatrist, and John Dempsey, director of the Michigan Department of Social Services.

Count I of the complaint is based on 42 U.S.C. § 1983 and charges all defendants with depriving plaintiffs of certain rights. Counts II and III are pendent state law claims under the Michigan Handicappers' Civil Rights Act, M.C.L.A. § 37.1302(a), and for common law malpractice, respectively. Count III is filed against the defendants Mueller, Henricks, Onate, Tooley and Wallenbrock only.

DISCUSSION

A. *Statute of Limitations*

1. 42 U.S.C. § 1983

Both defendants Mueller, Henricks and Dempsey, and defendant Wallenbrock argue that plaintiffs' § 1983 claims are barred by the statute of limitations.

 Congress, of course, did not provide a specific statute of limitations for § 1983. Therefore, the court must apply the most analogous state statute of limitations. 42 U.S.C. § 1988; *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Federal courts have held, almost unanimously, that Michigan's three-year catch-all personal injury statute of limitations, M.C.L.A. § 600.5805(8), applies to actions brought under the federal civil rights statutes. *Krum v. Sheppard,* 407 F.2d 490 (6th Cir. 1967); *Madison v. Wood,* 410 F.2d 564 (6th Cir. 1969); *Welden v. Board of Education,* 403 F.Supp. 436 (E.D.Mich.1975); *Gordon v. City of Warren,* 415 F.Supp. 556 (E.D.Mich.1976), *rev'd. on other grounds,* 579 F.2d 386 (6th Cir. 1978); *An-Ti Chai v. Michigan Technological University,* 493 F.Supp. 1137 (W.D.Mich.1980); *Abshire v. Tichvon,* 500 F.Supp. 444 (E.D.Mich.1980). *But cf. Mulligan v. Schlachter,*

389 F.2d 231 (6th Cir. 1968). The court adheres to this line of decisions and holds, therefore, that plaintiffs' § 1983 claims are governed by the three-year statute of limitations. M.C.L.A. § 600.5805(8).

The more critical issue is that of accrual of plaintiffs' cause of action, that is, on what date did the statute of limitations begin to run. Neither the Supreme Court nor the Sixth Circuit Court of Appeals have decided whether, as to § 1983 claims, this issue is governed by state or federal law.[5] However, other Courts of Appeals have, and without dissent they have held that *when* a § 1983 cause of action accrues is a question of federal law. *Rivera Fernandez v. Chardon,* 648 F.2d 765, 767 (1st Cir.), *rev'd. on other grounds,* —— U.S. ——, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam); *Kaiser v. Cahn,* 510 F.2d 282, 285 (2d Cir. 1974); *Cox v. Stanton,* 529 F.2d 47, 50 (4th Cir. 1975); *Bireline v. Seagondollar,* 567 F.2d 260, 263 (4th Cir. 1977), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979); *Lavellee v. Listi,* 611 F.2d 1129, 1130 (5th Cir. 1980); *Briley v. State of California,* 564 F.2d 849 (9th Cir. 1977). *See also, Morris v. Hoag,* 495 F.Supp. 797, 800 (W.D.Mich.1980). The court also accepts this line of precedent and holds, therefore, that federal law is controlling on the issue of accrual of § 1983 claims.

However, as to the issue of tolling of the statute of limitations, the court is clearly obliged to apply Michigan law. *Board of Regents v. Tomanio, supra.*

 As to the plaintiff Cass Kurzawa, his claim was clearly filed within the applicable period of limitation. He was a minor at the time his cause of action accrued, whenever that might have been. Therefore, he had until one year following his eighteenth birthday to file suit. M.C.L.A. § 600.-5851(1). Since the plaintiff Cass Kurzawa is even now far short of his eighteenth birthday, the motions to dismiss and for

---

5. *See, Rawlings v. Ray,* 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941) (accrual of bank receiver's cause of action to enforce liability imposed by Comptroller of Currency is federal question); *Accord, Fisher v. Whiton,* 317 U.S. 217, 63 S.Ct. 175, 87 L.Ed. 223 (1942); *Cope v. Anderson,* 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed.

1602 (1947). *See also, Gaudin v. KDI Corp.,* 576 F.2d 708 (6th Cir. 1978) (federal law governs accrual of cause of action under Securities Exchange Act of 1934, even though state statute of limitations applies); *Accord, Herm v. Stafford,* 663 F.2d 669 (6th Cir. 1981).

summary judgment on his § 1983 claim on statute of limitations grounds must be denied.

As for the plaintiff-parents, they contend that their § 1983 cause of action accrued in February, 1980, when the Michigan Court of Appeals ordered their child returned to them. The defendants, on the other hand, contend that plaintiffs' cause of action arose in 1977 or 1978, whenever the particular defendant was last involved with the plaintiffs.

■ The federal standard governing the accrual of § 1983 actions is that, "the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action." *Cox v. Stanton, supra,* at 50; *Accord, Bireline v. Seagondollar, supra,* at 263; *Lavellee v. Listi, supra,* at 1131.

■ It is unnecessary for the court to pinpoint precisely the dates on which plaintiffs John and Frances Kurzawa's § 1983 claims accrued against the various defendants. It is clear from the complaint that the injury which is the basis for their § 1983 claims was an alleged abuse or misuse by defendants of state procedures, or an abuse of their positions as state officials, which resulted in the Kurzawa's losing custody of their son, Cass. In other words, plaintiffs appear to claim that they were deprived of a liberty or property interest (custody of their son) without due process of law. This injury occurred, *at the latest,* on April 5, 1978, when the Lenawee County Probate Court terminated the Kurzawa's parental rights. On that date, they certainly knew, or had reason to know, of the injury which is the basis for this action. Therefore, their § 1983 claim accrued no later than April 5, 1978. Since the complaint was filed more than three years later, the plaintiff-parents' § 1983 claims are time-barred unless the running of the statute of limitations was tolled in some manner.

As noted above, the court must look to Michigan law to determine if the time for filing an action is tolled during the period in which a litigant pursues a related, but independent, cause of action. Unfortunately for plaintiffs, there is no such law in Michigan. The Michigan statutes codify most of the common law tolling rules. *E.g.,* M.C.L.A. § 600.5851 (infancy, insanity, imprisonment); M.C.L.A. § 600.5853 (defendant beyond state's jurisdiction and not amenable to process); M.C.L.A. § 600.5854 (war); M.C.L.A. § 600.5855 (fraudulent concealment); M.C.L.A. § 600.5856 (filing of complaint). However, the Michigan legislature has not determined that the statute of limitation on one cause of action should be tolled while another, related, cause of action is litigated to completion. The situation is very similar to that faced by the plaintiff in *Board of Regents v. Tomanio.*

Plaintiffs attempt to avoid this conclusion by arguing that the wrong done to them was "continuing" in nature and that, therefore, the statute of limitations did not begin to run until Cass was returned to them in February, 1980. Analytically, the issue of "continuity" may be treated as an aspect of the larger accrual question, in which case federal law would govern. *Kaiser v. Cahn, supra.* Alternatively, the issue may be viewed as an aspect of the tolling question, in which case Michigan law should govern. *Board of Regents v. Tomanio, supra.*

However, this technical point need not be resolved here since, under any analysis, the acts alleged to give rise to the § 1983 claims did not continue past April 5, 1978. The complaint does not allege that any of the defendants deprived plaintiffs of any due process after April 5, 1978. The alleged wrong, if it was continuing up until April 5, 1978, did not continue past that date. To hold otherwise, would be to confuse the damages resulting from an alleged wrong with the injury giving rise to the cause of action.

Plaintiffs' reliance on *Gordon v. City of Warren,* 579 F.2d 386 (6th Cir. 1978) is misplaced. That case was firmly grounded in the Fifth Amendment's prohibition against the taking of private property for public use without just compensation. It was *not* based on due process violations. The district court's holding that it was not a "continuing wrong" for the city to appeal to the Michigan Supreme Court and keep its stop order in force after the

Michigan Court of Appeals had declared the ordinance invalid places too much emphasis on the word "wrong." *The "wrong" is the taking of the plaintiffs' property, not the method by which it is taken.* The wrong may be perpetuated by otherwise legal actions, such as appealing the court decision in this case. (Emphasis added) 579 F.2d at 391.

In this case, it is the "method" and *not* the "taking" which is the wrong. Plaintiff-parents certainly do not maintain that they were deprived of property without just compensation. They maintain that they were deprived of the custody of their son—whether that be labeled "liberty" or "property" interest—*without due process of law.* Thus, while it may make sense for the *Gordon* court to hold that the "taking" there was a continuing wrong, it does not make sense to call the wrong alleged in this case "continuing". The complaint alleges no contact between defendants and the plaintiff-parents after the Lenawee County Probate Court terminated the parents' rights. Therefore, even though plaintiff-parents continued to be deprived of the custody of their son, they were not being subjected to a continuing legal wrong.

Finally, plaintiff-parents argue that the statute of limitations could not have begun running until February, 1980, since prior to that date the Michigan courts had not determined that defendants' actions were illegal. Despite a superficial appeal, this argument lacks logic. A § 1983 action for deprivations of life, liberty or property without due process of law lies regardless of what the state courts do or do not do. Furthermore, plaintiffs' action in the state courts was based on state statutes. It alleged that the Lenawee County Probate Court had exceeded its powers in assuming jurisdiction over Cass Kurzawa. The § 1983 claim is, in a real sense, completely independent of the state court claim, and in no way dependent on it.

It follows that plaintiffs' citation to *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) is inapposite. The Court there held that the doctrine of collateral estoppel applies to § 1983 actions brought subsequent to state court actions, even if federal habeas corpus relief is unavailable to the § 1983 litigant. However, in *Allen,* plaintiff's constitutional claim had been litigated in state court. In this case, plaintiff-parents' due process claim was *not* litigated in the state courts. Although the Lenawee County Probate Court terminated the Kurzawa's parental rights, it did not consider any constitutional challenge to the activities of the defendants. Collateral estoppel simply has no application to the facts of this case.

For these reasons, the motion to dismiss and the motion for summary judgment on the § 1983 claims, are denied as to plaintiff Cass Kurzawa and granted as to plaintiffs John Kurzawa, Sr. and Frances Kurzawa. The § 1983 claims of John Kurzawa, Sr. and Frances Kurzawa are dismissed as against all defendants.

2. Michigan Handicappers' Civil Rights Act, M.C.L.A. § 37.1302(a)

■ Count II of the complaint charges that defendants denied plaintiffs their rights under the Michigan Handicappers' Civil Rights Act, specifically M.C.L.A. § 37.1302(a). Count II attempts to state a cause of action only as to the plaintiff-parents.

The Michigan Handicappers' Civil Rights Act appears to be governed by a three-year statute of limitations. M.C.L.A. § 600.-5805(8); *Gilbert v. Grand Trunk Western Railroad,* 95 Mich.App. 308, 290 N.W.2d 426 (1980). For the reasons discussed earlier in this opinion, it appears that this claim accrued no later than April 5, 1978, and that the wrong is not continuing in nature. Therefore, the motions to dismiss and for summary judgment on Count II of the complaint on statute of limitations grounds are granted. The Michigan Handicappers' Civil Rights Act claims of John Kurzawa, Sr. and Frances Kurzawa are dismissed as against all defendants.[6]

**6.** Plaintiff-parents conceded in their brief and at oral argument that their Count II claims

### 3. Malpractice

Count III of the complaint attempts to state a claim for malpractice against the defendants Mueller, Henricks, Onate, Tooley and Wallenbrock for all three plaintiffs.

■ The statute of limitations challenge to plaintiff Cass Kurzawa's malpractice claim must be denied. M.C.L.A. § 600.-5851(1). However, as to the plaintiff-parents, the motions must be granted.

All malpractice suits in Michigan are governed by a two-year statute of limitations. M.C.L.A. § 600.5805(4). A malpractice cause of action accrues "at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose." M.C.L.A. § 600.5838(1).[7]

Since the complaint alleges no contact between plaintiff-parents and any of these defendants after April 5, 1978, the two-year statute of limitations expired well before plaintiffs filed their complaint. Therefore, the Count III claims of plaintiffs John Kurzawa, Sr. and Frances Kurzawa are barred, and the motions to dismiss and for summary judgment on statute of limitations grounds are granted as to them. Plaintiff-parents' Count III claims are dismissed against all five defendants.[8]

### B. *Failure to State Cause of Action*

Defendant Wallenbrock has also moved for summary judgment on plaintiffs' § 1983 claims on the grounds that 1) plaintiffs' claim of conspiracy is supported only by conclusory allegations, and 2) plaintiffs have not alleged that defendant "acted under color of law." These motions are best treated as one motion to dismiss for failure to state a cause of action. Fed.R.Civ.P. 12(b)(6). This motion is granted.

■ To state a cause of action under § 1983, a plaintiff must allege first, that some person has deprived him of a federal right, and second, that the person who has deprived him of that right acted under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Here plaintiffs have failed to satisfy the second of these requirements.

■ The complaint alleges that defendant Wallenbrock acted "under color of" law in that she "did conspire and engage in concerted activity designed to deprive plaintiff-parents of their Constitutional rights to custody of their child." Clearly, "under color of" state law does not require that the defendant be an officer of the state. Private persons, jointly engaged with state officials in prohibited action can be acting "under color of" law. It is enough that the private party is a willful participant in joint activity with the state or its agents. *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).

■ However, it is not enough to merely allege, in conclusory terms, that the defendant "conspired with" or "engaged in concerted activity with" state officials. *Grow v. Fisher*, 523 F.2d 875, 878–79 (7th Cir. 1975); *Sparkman v. McFarlin*, 601 F.2d 261 (7th Cir. 1979); *Glaros v. Perse*, 628 F.2d 679, 684–85 (1st Cir. 1980). This is in line with the requirement that the factual basis supporting the existence of a conspiracy must be pled in some detail in civil rights actions based on 42 U.S.C. § 1985(3). *See, e.g., Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972). Since the plaintiffs have done no more than allege, in the most conclusory terms, that Wallenbrock conspired with the other defendants, they have

against the defendant Wallenbrock should be dismissed.

**7.** M.C.L.A. § 600.5838(1) applies to all "state licensed profession[als]." Defendants Onate, Tooley and Wallenbrock are indisputably licensed professionals. It also appears the defendants Mueller and Henricks, who are both

alleged to be social workers, are also "state licensed profession[als]." M.C.L.A. § 339.-1603.

**8.** Plaintiff-parents conceded in their brief and at oral argument that their Count III claims against the defendant Wallenbrock should be dismissed.

failed to allege that Wallenbrock acted "under color of" law. Therefore, their § 1983 claims must be dismissed for failure to state a cause of action. Fed.R.Civ.P. 12(b)(6). The plaintiffs' § 1983 claims are dismissed as against defendants Wallenbrock, Onate, Tooley and Baldwin.

### C. *Lack of Pendent Jurisdiction as to Defendants Onate, Tooley and Baldwin*

The court has just held that plaintiffs' § 1983 action against the defendants Wallenbrock, Onate, Tooley and Baldwin must be dismissed for failure to state a cause of action. It follows that the remaining state law claims must be dismissed for lack of pendent jurisdiction. Fed.R.Civ.P. 12(b)(1). Therefore, Counts II and III of the complaint are dismissed as against the defendants Wallenbrock, Onate, Tooley and Baldwin.

### D. *No Physician-Patient Relationship*

Defendant Wallenbrock has also moved for summary judgment on plaintiffs' malpractice claims on the ground that there was no physician-patient relationship between her and the plaintiffs. Because the plaintiff-parents have conceded that their malpractice claim against the defendant Wallenbrock is barred by the statute of limitations, it is unnecessary for the court to rule on this motion as to them.

As to the plaintiff Cass Kurzawa, Wallenbrock has filed an affidavit stating that she did not treat or recommend treatment for Cass, that she was not involved in the management of his case, that she was employed to perform an independent psychiatric evaluation, and that her fees were paid by the Lenawee County Probate Court.

Plaintiff has not come forward with any counter-affidavit or other record to establish a genuine issue as to the material fact of the existence of a physician-patient relationship. This he was obligated to do to defeat Wallenbrock's motion for summary judgment. Fed.R.Civ.P. 56(c), (e).

As there appears to be no genuine issue as to any material fact, and as it appears that defendant is entitled to judgment as a matter of law, *Rogers v. Horvath*, 65 Mich. App. 644, 237 N.W.2d 595 (1976), defendant Wallenbrock's motion for summary judgment as to plaintiff Cass Kurzawa's malpractice claim is granted. Fed.R.Civ.P. 56(c).

### E. *Propriety of Plaintiffs John and Frances Kurzawa Acting as Next Friend for Cass Kurzawa*

Both defendant Wallenbrock and defendants Mueller, Henricks and Dempsey have challenged the propriety of plaintiff-parents' action in bringing this suit as next friend of plaintiff Cass Kurzawa. These motions are disposed of in a separate order entered this same day.

CONCLUSION

1. Plaintiffs John Kurzawa, Sr. and Frances Kurzawa's 42 U.S.C. § 1983, M.C.L.A. § 37.1302(a), and malpractice claims are dismissed as barred by the applicable statutes of limitations.

2. Plaintiffs' 42 U.S.C. § 1983 claims against defendants Wallenbrock, Onate, Tooley and Baldwin are dismissed for failure to state a cause of action.

3. Counts II and III of the complaint are dismissed as against defendants Wallenbrock, Onate, Tooley, and Baldwin for lack of pendent jurisdiction.

4. Defendant Wallenbrock is granted summary judgment against plaintiff Cass Kurzawa on the malpractice count (Count III) of the complaint.

5. The motions seeking to prevent the plaintiffs John Kurzawa, Sr. and Frances Kurzawa from acting as Next Friend of the plaintiff Cass Kurzawa are addressed in a separate order. In all other respects, the motions are denied.

So ordered.