707 F.2d 103
 OCEAN ACRES LIMITED PARTNERSHIP, A Limited Partnership
Organized Under the Laws of The State of North
Carolina, by and through its General
Partner, W. Grayson Pierce, Appellant,
v.
DARE COUNTY BOARD OF HEALTH and County of Dare, Appellees.
OCEAN ACRES LIMITED PARTNERSHIP, a Limited Partnership
Organized Under the Laws of The State of North
Carolina, by and through its General
Partner, W. Grayson Pierce, Appellee,
v.
DARE COUNTY BOARD OF HEALTH and County of Dare, Appellant.
 Nos. 82-1458, 82-1489.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 7, 1982.
Decided May 12, 1983.
 
 Roy A. Archbell, Jr., Kitty Hawk, N.C. (Norman W. Shearin, Shearin & Archbell, Kitty Hawk, N.C., on brief), for appellant.
 Grover G. Wilson, James H. Kelly, Jr., Winston Salem, N.C. (Jeffrey C. Howard, Petree, Stockton, Robinson, Vaughn, Glaze & Maready, Winston Salem, N.C., on brief), for appellees.
 Before WINTER, Chief Judge, CHAPMAN, Circuit Judge and MICHAEL,* District Judge.
 CHAPMAN, Circuit Judge.
 
 
 1
 Plaintiff Ocean Acres Limited Partnership (Ocean Acres) appeals a district court decision granting the defendants' motion for summary judgment. Plaintiff claims that its property has been taken without just compensation and that it has been deprived of property without due process of law. We affirm the district court's conclusions, 514 F.Supp. 1117, that there are no genuine issues of material fact in regard to the inverse condemnation claim and that the due process claims are barred by the North Carolina three year statute of limitations for actions brought under 42 U.S.C. Sec. 1983.
 
 
 2
 * Ocean Acres was formed in 1972 for the purpose of developing a 165 acre tract of land in Dare County, part of North Carolina's Outer Banks. The tract was located adjacent to Fresh Pond, which was at that time the source of fresh water for the towns of Nags Head and Kill Devil Hills. These towns and Dare County have experienced substantial growth since the late 1960's because of the popularity of the area as a resort location.
 
 
 3
 In April 1972, the partnership's development plans calling for septic tanks were rejected by Dare County. Plaintiff was informed of the county's action after an option held by the two general partners to purchase the tract had been exercised[1] but before the closing had taken place. Representatives of Ocean Acres met with state and county health officials but were unable to change the requirement for a central sewerage system for a yet undetermined portion of the development. The lawyer of one of the general partners advised that a legal challenge to this decision could be mounted. The general partners chose instead to proceed with the closing. In June 1972, the Dare County Sanitarian issued a moratorium on the installation of septic tanks in a portion of the area proposed to be developed by Ocean Acres because of the proximity of the tract to Fresh Pond. Ocean Acres proceeded to develop its tract, installing a central sewerage system instead of septic tanks.[2] Installation of the central sewerage system was completed in the spring of 1973. The septic tank moratorium remained in effect as a policy of the Dare County Board of Health until March 1978. In May 1978, the towns of Nags Head and Kill Devil Hills adopted ordinances incorporating septic tank restrictions.
 
 
 4
 Ocean Acres filed suit on June 6, 1979 naming as defendants Dare County, the Dare County Board of Health, the Dare County sanitarian and the towns of Nags Head and Kill Devil Hills. Defendants other than Dare County and the County Board of Health were later dismissed on plaintiff's motion. In its complaint plaintiff claimed, inter alia, violations of the "taking clause" and of due process guarantees of the fifth and fourteenth amendments.
 
 II
 
 5
 We agree with the district court that there are no genuine issues of material fact in regard to the "taking" claim. A use restriction on real property may constitute a taking if not reasonably necessary to the effectuation of a substantial public purpose or if it has an unduly harsh impact upon the owner's use of the property. Penn Central Transportation Co. v. New York City, 438 U.S. 104, 127, 98 S.Ct. 2646, 2660, 57 L.Ed.2d 631 (1978). The preservation of a public water supply, especially in a rapidly developing area such as the Outer Banks, is a substantial public purpose. Although the plaintiff has alleged that the return on its investment was substantially lower than it had expected, it did make a profit. The septic tank ban thus does not constitute a "taking". Andrus v. Allard, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979).
 
 
 6
 [L]oss of future profits--unaccompanied by any physical property restriction--provides a slender reed upon which to rest a takings claim. Prediction of profitability is essentially a matter of reasoned speculation that courts are not especially competent to perform. Further, perhaps because of its very uncertainty, the interest in anticipated gains has traditionally been viewed as less compelling than other property-related interests. (citations omitted) Id. at 66, 100 S.Ct. at 327.
 
 
 7
 When the benefit to the public of preserving a fresh water supply is balanced against the limited partnership's expectations of profit, the balance does not weigh heavily enough in plaintiff's favor to establish material issues of fact concerning a taking of property without just compensation. Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); Andrus v. Allard, supra; Penn Central Transportation Co. v. New York City, supra.
 
 III
 
 8
 The district court found that the due process claims were barred by the three year statute of limitations on actions brought under 42 U.S.C. Sec. 1983 in North Carolina.[3] Bireline v. Seagondollar, 567 F.2d 260 (4th Cir.1977), cert. denied, 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979). Ocean Acres contends that it should not be time barred from bringing its due process claims under either of two theories: that defendants' actions amounted to fraudulent concealment or that the moratorium constituted a "continuing wrong."
 
 
 9
 According to plaintiff, the statute of limitations should be tolled because defendants fraudulently concealed the real motive behind the septic tank ban. Plaintiff claims that the county also overstated the thoroughness of the investigation preceding the moratorium and the scientific basis of the septic tank ban. Accepting these statements as true, they do not amount to concealment that would have prevented the plaintiff from discovering "facts which are the basis of [its] cause of action despite the exercise of due diligence on [its] part." Weinberger v. Retail Credit Co., 498 F.2d 552, 555 (4th Cir.1974). The existence of a possible cause of action was apparent to plaintiff when the general partner was advised by his lawyer that he could litigate the issues. The facts upon which the present cause of action is based were known to plaintiff more than three years prior to the filing of this action. Seven years elapsed between the moratorium and the suit.
 
 IV
 
 10
 Ocean Acres also argues that plaintiff has a right to recover damages accruing within three years prior to the filing of the lawsuit under the theory that the moratorium constituted a continuing wrong.[4] Although it is indisputable that the moratorium was in existence until March 1978, this fact does not end the inquiry of whether the "continuing wrong" exception applies. Cooper v. United States, 442 F.2d 908 (7th Cir.1971). "The particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged must all be considered." Id. at 912.
 
 
 11
 The nature of the alleged wrongful conduct was a governmental enactment which required plaintiff to alter its development plans and affected plaintiff's expectations of profit. The county's conduct was not, however, part of an ongoing contractual relationship between two individuals such as that between a buyer and seller of real estate under an installment contract. Baker v. F & F Investment, 420 F.2d 1191 (7th Cir.1970), cert. denied, 400 U.S. 821, 91 S.Ct. 42, 27 L.Ed.2d 49 (1970). Nor did the conduct involve a series of acts such as those in an employer-employee relationship. Williams v. Norfolk and Western Railway Company, 530 F.2d 539 (4th Cir.1975); Marlowe v. Fisher Body, 489 F.2d 1057 (6th Cir.1973). Also distinguishable is an act by a governmental entity which actually deprives an individual of use of his property pending court proceedings. Gordon v. City of Warren, 579 F.2d 386 (6th Cir.1978) (after mistakenly issuing a building permit to plaintiffs, city directed that construction work stop, resulting in proceedings in state court. Court found that the limitations period did not begin to run until the date the state supreme court held that the ordinance was invalid).
 
 
 12
 The actions and positions taken by defendants have not substantially changed since 1972. Nor has plaintiff incurred any additional damages which did not flow from the septic tank prohibition instituted in June 1972. "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Ward v. Caulk, 650 F.2d 1144, 1147 (9th Cir.1981), cited with approval in Sandutch v. Muroski, 684 F.2d 252, 254 (3rd Cir.1982).
 
 
 13
 The harm alleged by Ocean Acres is a violation of both procedural and substantive due process rights. In the amended complaint, plaintiff claims that procedural due process guarantees were violated by the Dare County Health Department because plaintiff was given neither notice nor an opportunity to challenge the moratorium. The claims involving substantive due process are that the moratorium was not reasonably related to a substantial public purpose and that the means used were not reasonably necessary for the accomplishment of the purpose. Plaintiffs allege specifically that the ban was unreasonable in its duration.
 
 
 14
 With the exception of the question of duration of the moratorium, these allegations focus on the initial actions taken by defendants, not on a continuing course of conduct. The issue of when a cause of action based on due process guarantees accrues was addressed in Kurzawa v. Mueller, 545 F.Supp. 1254 (E.D.Mich.1982). Distinguishing Gordon v. City of Warren, supra, as a case involving continuous injuries caused by the taking of property without just compensation, the Kurzawa court quoted the statement in Gordon that "the 'wrong' is the taking of the plaintiffs' property, not the method by which it is taken" and added:In this case, it is the "method" and not the "taking" which is the wrong. Plaintiff-parents certainly do not maintain that they were deprived of property without just compensation. They maintain that they were deprived of the custody of their son--whether that be labeled "liberty" or "property" interest--without due process of law. Thus, while it may make sense for the Gordon court to hold that the "taking" there was a continuing wrong, it does not make sense to call the wrong alleged in this case "continuing". The complaint alleges no contact between defendants and the plaintiff-parents after the Lenawee County Probate Court terminated the parents' rights. Therefore, even though plaintiff-parents continued to be deprived of the custody of their son, they were not being subjected to a continuing legal wrong. 545 F.Supp. at 1261.
 
 
 15
 Finally, the "particular policies of the statute of limitations in question" are to be considered. General principles of such statutes are applicable. Plaintiff was aware of the actions taken by the county and of the impact of those actions on its proposed development. The general partners were advised that issues could be litigated; in June 1972 they wrote a letter to the Office of the Attorney General of North Carolina requesting information on the septic tank ban. The general partners were faced with the choice of further investigating the moratorium, litigating the partnership's claims or proceeding with the development of the property. Although it may be apparent in hindsight that the decision to develop the property was ill-advised, a "continuing wrong" theory should not provide a means of relieving plaintiff from its duty of reasonable diligence in pursuing its claims. We find that the due process claims accrued when plaintiff knew of or had reason to know of the alleged injury which is the basis of its action. Cox v. Stanton, 529 F.2d 47, 50 (4th Cir.1975).
 
 
 16
 Therefore, Ocean Acres is now time barred from bringing claims based on due process guarantees.
 
 
 17
 Accordingly, the decision of the district court is
 
 
 18
 AFFIRMED.
 
 
 19
 HARRISON L. WINTER, Chief Judge, concurring specially:
 
 
 20
 I concur in the judgment and the majority opinion except with respect to the discussion of plaintiffs' theory of continuing wrong.
 
 
 21
 While I have lingering doubts as to whether plaintiffs alleged a continuing wrong by reason of the moratorium so as to remove the bar of the statute of limitations, see Gordon v. City of Warren, 579 F.2d 386 (6 Cir.1978), I feel it is unnecessary to reach this issue because I am persuaded that plaintiffs sustained no injury within three years prior to the filing of suit. The majority has pointed out in n. 4 of the majority opinion that it is unlikely that after the spring of 1973 plaintiffs expended sums that were not minimal as a result of the moratorium. In their complaint, plaintiffs did not plead any expenditures within the three-year period prior to filing suit, and more importantly in their affidavits in opposition to defendants' motion for summary judgment, they adduced no such proof. Indeed the affidavits appear to confirm that plaintiffs' sole damage claim is loss of profits and the initial cost of installation of the central sewer system. If the alleged continuing wrong occasioned no continuing or further injury, I think the suit is time-barred.
 
 
 
 *
 Honorable James H. Michael, Jr., United States District Judge for the Western District of Virginia, sitting by designation
 
 
 [1]
 At this time plaintiff had expended only $1000 for the option
 
 
 [2]
 One of the general partners described the decision to develop the property in an affidavit: "Once we were confronted with the Dare County Health Department's ban on the use of septic tanks in the vicinity of Fresh Pond, which affected virtually all of the plaintiff's usable land west of U.S. 158 By-Pass (a substantial portion of its land development), we made the best of it, reasonably assuming that future increases in land values would enable us to recoup the very substantial financial investment which was necessary to construct, maintain and operate a central sewer system."
 
 
 [3]
 The three year statute of limitations does not apply to the inverse condemnation claim. Hoyle v. City of Charlotte, 276 N.C. 292, 172 S.E.2d 1, 11 (1970)
 
 
 [4]
 Even if the theory of a "continuing wrong" were applicable, it appears from the record that most of the claimed damages were for expenses incurred prior to June 7, 1976 (three years before the date that suit was filed). The central sewerage system had been installed by the spring of 1973 and development and sale of lots followed. Although from an examination of the record it cannot be conclusively determined that, subsequent to June 1976, no sewer lines were hooked up to the central sewerage system to service lots included in the area affected by the moratorium, the expenses of such hook ups, as compared to the total damages claimed, appear to be small. Further, the developers chose to install sewer lines to service lots on which septic tanks would have been permitted by the county (Tract 3, Section 1-A; Tract 3, Section 3 and Tract 3, Section 4)