Richard D. GARLAND, Plaintiff,

v.

Harold T. SHAPIRO, Henry Johnson, Thomas A. Moorehead, Donald Deskins, Deliah Jacobs, Kathleen Dannemiller, Aubrey Pruitt, George R. Carter, Bruce Pringle, Armando Lopez, John Powell, and the Board of Regents of the University of Michigan, Defendants.

Civ. A. No. 83–CV–6255–AA.

United States District Court, E.D. Michigan, S.D.

Jan. 31, 1984.

Richard D. Garland, in pro per., and Elliott S. Hall, Detroit, Mich., for plaintiff.

Robert M. Vercruysse, Gregory V. Murray, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

FEIKENS, Chief Judge.

Plaintiff sues the Regents of the University of Michigan and a number of the University's employees pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, claiming a denial of due process. Jurisdiction is conferred pursuant to 28 U.S.C. § 1331. Defendants move for dismissal claiming, *inter alia,* that plaintiff's action is barred by statute of limitations.

### I. BACKGROUND

Plaintiff Richard Garland was an employee of the University of Michigan from September 1969 through his termination on June 30, 1980. On April 9, 1980, Garland was informed by his immediate supervisor that his employment was being terminated effective June 30, 1980. According to Garland, at some time after notice of his termination and before his last day of employment, he made inquiries regarding the pro-

cedure for challenging his dismissal. In making such inquiries he was allegedly informed that he would not be given a written statement of the reasons for his termination. He also claims to have discovered that portions of his personnel file were missing, and would therefore not be available to him at his hearing. Garland also claims that when the time came to schedule his post termination hearing, he was informed that it would not be a full adversarial-type hearing (*i.e.*, he would not be able to call witnesses, the hearing would not be transcribed, etc.). On the advice of his attorney, Garland decided he would not attend such a hearing. The hearing was nevertheless held on September 24, 1980, (in Garland's absence), and the hearing panel affirmed the decision to terminate his employment.

Garland filed a mandamus action against the University and others in Washtenaw County Circuit Court on September 24, 1980. File No. 80–19698 AW. In that action Garland claimed that he was deprived of his job without due process of law and requested that the court order the officials of the university to accord him a "proper" hearing. On June 30, 1983, Garland filed this action claiming a deprivation of constitutional rights and requesting declaratory, injunctive, and monetary relief. In response to this action defendants have moved for dismissal claiming, *inter alia*, that Garland's action is barred by statute of limitations. For reasons stated, defendants' motion is granted and Garland's action is dismissed.

## II. DISCUSSION

 Congress did not enact a statute of limitations for actions brought under 42 U.S.C. §§ 1983 or 1985; * thus, federal courts must apply the state statute of limitations most analogous to the asserted claim. *Dunn v. Tennessee*, 697 F.2d 121 (6th Cir.1982); *Mason v. Owens-Illinois, Inc.*, 517 F.2d 520 (6th Cir.1975). The parties concede that in actions of this sort the

applicable statute of limitations is Michigan's three-year limitation for general injuries to the person. M.C.L.A. § 600.5805(8). *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir.1973). Garland filed this action on June 30, 1983. Thus, if his cause of action accrued prior to June 30, 1980, it will be barred by the statute of limitations.

 Although Garland was employed by the University until June 30, 1980, he was officially notified of his termination on April 9, 1980. In *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the United States Supreme Court addressed the question of when the cause of action accrued in a case where a college professor was notified of the denial of his tenure at one date, and actual termination followed at a later date. The Court first noted the policy and purpose of the statute of limitations in cases such as this, stating:

> The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–464 [95 S.Ct. 1716, 1721–1722, 44 L.Ed.2d 295] (1975); see *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 [97 S.Ct. 1885, 1889, 52 L.Ed.2d 571] (1977).

*Id.* at 256–257, 101 S.Ct. at 503; and that:

> It should not be forgotten that time-limitations provisions themselves promote important interests; "the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Johnson v. Railway Express Agency, Inc.*, 421 U.S., at 463–464 [95 S.Ct. at 1722]. See *Mohasco Corp. v. Silver*, 447 U.S. 807, 820, 825 [100 S.Ct.

---

* Garland's § 1986 action is governed by the one-year statute of limitations specifically provided

for in 42 U.S.C. § 1986.

2486, 2494, 2496, 65 L.Ed.2d 532] (1980) (footnote omitted).

*Id.* at 259–260, 101 S.Ct. at 505.

The Court went on to decide that the cause of action accrued at the time of initial notification, rather than the time of actual termination. In so holding, the Court stated:

> In sum, the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to [Plaintiff]. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later. The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that "[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (1979) (emphasis added); see *United Air Lines, Inc. v. Evans*, 431 U.S., at 558 [97 S.Ct. at 1889] (footnote omitted).

*Id.* at 258, 101 S.Ct. at 504. In light of the holding in *Ricks* there can be no doubt but that Garland's cause of action accrued when he was officially notified of his termination on April 9, 1980.

■ Garland seeks to distinguish his case from *Ricks* by arguing that his claim is based upon denials of due process which occurred after the notification of his termination, and which in fact continue to the present time. Specifically, Garland contends that he requested and was denied an adversarial-type due process hearing on his termination as late as September 1980, and that such requests were denied. He reasons that since such denials continued to occur within the three-year statute of limitations, actions based upon them are not barred.

Garland attempts to circumvent the requirements of the statute of limitations by arguing that his cause of action is based not upon his termination, but upon the denial of due process involved in that termination. Stated another way, Garland seeks

to challenge an action which occurred outside the statute of limitations (his termination) by challenging the defendants' failure to alter that action at a time within the statute of limitations. The Supreme Court implicitly dealt with this argument in *Ricks*. There the plaintiff filed a grievance after notification of denial of tenure, and that grievance was pending for some time thereafter. It was argued that the date of final grievance resolution, rather than initial notification, should mark the accrual of the cause of action. The Court rejected that argument, reasoning that the actual decision was made at the time of initial notification, and that the grievance was, at most, a possible remedy for that prior decision. In other words, even though the ultimate decision in the grievance proceedings may have been as discriminatory or constitutionally infirm as the prior official decision, "the decision" for statute of limitation purposes was the initial decision, and not the decision in the grievance resolution.

Garland's affidavit demonstrates that he knew at a time prior to June 30, 1980, that he would not be given a written statement of the reason for his termination. His papers also demonstrate that he discussed and was aware of grievance procedures prior to June 30, 1980, and that he knew or should have known that he would not be given a full adversarial-type hearing. Nevertheless, Garland claims that the alleged denial of due process occurred within the limitation period because he continued to ask for and was continually denied an adversarial-type hearing as late as September 1980.

This contention has bizarre implications. It effectively argues that in any case involving an alleged deprivation of due process the cause of action will survive forever, for all the aggrieved party need do is request that he be given the due process he was originally denied, and any refusal to provide such will be an independent or continuing violation. The United States Court of Appeals for the Fourth Circuit addressed a similar argument in *Ocean Acres Limited Partnership v. Dare County*

*Board of Health,* 707 F.2d 103 (4th Cir. 1983). There the plaintiff claimed that the defendant denied due process by imposing certain land use restrictions, and that, since the restrictions remained in effect, they constituted a continuing violation. The court held that this was not a continuing violation because the law suit in question focused on the initial action taken by defendant, and not on any continuing course of conduct. Similarly, in *Kurzawa v. Mueller,* 545 F.Supp. 1254 (E.D.Mich.1982), the plaintiffs alleged that the state terminated their parental rights without due process, and argued that such action was a continuing violation until their child was returned. Judge Joiner rejected that argument stating that, "To hold otherwise, would be to confuse the damages resulting from an alleged wrong with the injury giving rise to the cause of action." *Id.* at 1260.

The essence of Garland's argument is that the defendants are committing a continuing violation by refusing to alter their decision regarding the type of due process hearing to be accorded. A similar argument was asserted in *Meyers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894 (3d Cir.1977). There the plaintiff alleged that he was denied equal housing by defendant's refusal to rent him an apartment. The initial refusal occurred in 1972, and the plaintiff did not bring his action until 1975. Notwithstanding this delay, the plaintiff claimed that his action was not barred by the applicable 180-day statute of limitations. He based this argument on the fact that he contacted the defendant shortly before filing the action in 1975, and the defendant continued to refuse to rent to him. The plaintiff argued that this renewed refusal constituted a continuing violation. The court rejected this argument, stating:

> If such futile attempts at settlement or negotiation by the alleged injured party were allowed to breathe life into a claim long dead, the 180 day limitation established by Congress would have little significance. Such a tactic, if permitted, would enable a victim of alleged discrimi-

nation to circumvent the statute of limitations merely by provoking his adversary into another refusal to sell or rent. We cannot believe that Congress intended the 180 day limitation of section 3612(a) to operate in such a fashion. *Id.* at 899.

The court's reasoning in *Meyers* is equally applicable here. If plaintiff were allowed to resurrect his stale due process claim by merely requesting the same relief as was initially denied, and thereby prompting a new refusal, the policies served by the statute of limitations as recognized by the Supreme Court in *Ricks* would be thoroughly frustrated. A refusal to change one's mind does not necessarily make for a continuing violation. In this case, the Supreme Court's directive in *Ricks* clearly indicates that Garland's cause of action accrued at the time he was officially notified of his termination. In that this action was filed more than three years after such notification, Garland's action is barred by the statute of limitations, and defendants' motion to dismiss is therefore granted.

Moreover, if Garland's claims were not barred by statute of limitations, I would be inclined to abstain from hearing this matter until the parallel state court action was decided. Garland filed a mandamus action in state court on September 24, 1980. The claims in this state court action are substantially similar to those in the federal action, and both suits request that the respective courts require due process hearings. Presumably, if the state court orders such hearing this case will in large part become moot. Although I requested that the parties brief this matter, they did not submit information which specifically describes the status of the state court proceedings; however, in that the state court action has been pending for over three years, I can only assume that the court is nearing a determination.

In *Colorado River Water Conservation District v. U.S.,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court examined the propriety of federal court

abstention in cases where a similar action is pending in state court. The Court began by recognizing that the federal courts have a virtually unflagging obligation to exercise the jurisdiction granted them. However, the Court went on to hold that ... "consideration of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' ..." would justify the dismissal of a federal action in favor of a pending state action in certain exceptional circumstances. *Id.* at 817, 96 S.Ct. at 1246. The Court went on to list certain circumstances which may be exceptional, including ... "the desirability of avoiding piecemeal litigation ... and the order in which jurisdiction was obtained by the concurrent forums ..." *Id.* at 818, 96 S.Ct. at 1247. The Supreme Court recently discussed the considerations involved in determining whether such exceptional circumstances exist, stating:

> This factor [priority of filing], as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions. *Colorado River* illustrates this point well. There, the federal suit was actually filed first. Nevertheless, we pointed out as a factor favoring dismissal "the apparent absence of any proceedings in the District Court, other than the filing of the complaint, prior to the motion to dismiss." 424 U.S., at 820, 96 S.Ct. at 1248.

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* — U.S. —, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983).

In the case at hand, as in *Colorado River,* there have been no proceedings in the federal court other than the complaint and motion to dismiss. The state court, on the other hand, has been handling this matter for years and has doubtlessly made substantial progress in the case. Thus, given the relative progress in each case and given the fact that the state court's resolution of

this matter may make this action unnecessary, I would have seriously considered staying this action had I not determined that it was barred by the statute of limitations.

An appropriate order dismissing Garland's action may be submitted.