## MAZUR v BLENDEA

Docket Nos. 65970-65972. Decided June 28, 1982. On application by the plaintiff for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals and remanded the case to the circuit court for a new trial.

Marvin Mazur, alleging that he was a shareholder of the defendant corporations, brought actions in Oakland Circuit Court against Richard C. Blendea, Eudora Blendea, E & A Warehouse, Limited, Motor City Leasing Company, Car Parts International & Manufacturing Company, and Car Parts, Inc., of Pontiac, charging various acts of corporate mismanagement. The actions were consolidated in the circuit court. The defendants challenged Mazur's standing to bring the actions, alleging that he was not a shareholder of the corporations. The trial court, John N. O'Brien, J., sitting as the trier of fact, found that Mazur was not a shareholder. The Court of Appeals, M. J. Kelly and D. E. Holbrook, Jr., JJ. (Danhof, C.J., dissenting), affirmed (Docket Nos. 26712-26714). The Supreme Court remanded the case to the trial court for further findings, because the trial court's findings were insufficient to permit appellate review, 401 Mich 838 (1977). Following a supplemental opinion by the trial court and a second conclusion that Mazur was not a shareholder, the Court of Appeals, M. J. Kelly, P.J., and R. B. Burns and Bashara, JJ., affirmed in an unpublished opinion per curiam (Docket Nos. 78-3377—78-3379). The Supreme Court vacated the judgment of the Court of Appeals and remanded the case to that Court for further consideration by a different panel because the Court of Appeals had applied the wrong standard of review. 409 Mich 858 (1980). The new panel, J. H. Gillis, P.J., and N. J. Kaufman and R. M. Maher, JJ., affirmed in another unpublished opinion per curiam (Docket Nos. 52411-52413). The plaintiff applies for leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held:*

The trial court's findings of fact are clearly erroneous. The trial judge relied on his conclusion that the plaintiff was an incredible witness and on one document in which the plaintiff said that his interest in one of the corporations was for security

only. These grounds were inadequate to reconcile the substantial evidence supporting the plaintiff's shareholder status with the court's findings. Even the total incredibility of a witness does not provide affirmative evidence of the contrary of his testimony, and the statement about his interest in one corporation is an insufficient basis for drawing conclusions about his interest in a different corporation.

Because of the substantial length of time since the trial of the case, no purpose would be served in still another remand for further findings of fact, and, rather, a new trial is ordered.

Reversed and remanded for a new trial.

74 Mich App 467; 253 NW2d 801 (1977) reversed.

*Lawrence J. Stockler, P.C.* (by *William R. Klein),* for plaintiff.

*Seymour Berger* for defendants.

PER CURIAM. This appeal challenges the circuit court's findings following a non-jury trial that the plaintiff was not a shareholder of the several corporations involved in this action and thus could not bring these shareholder actions charging various acts of corporate mismanagement by defendant Richard Blendea. We conclude that the findings are clearly erroneous and remand for a new trial.

I

The details of the relationships between the corporate entities and the individuals involved with them and the procedural history of the cases are complex, and a basic understanding of each is necessary to a discussion of the controlling issues in this case.

While there are sharp disagreements between the parties as to the motives for the various corporate arrangements and as to their legal effect, a

number of the basic facts are not seriously disputed. The relevant events began in January, 1971, when two corporations were formed: Car Parts International & Manufacturing Company (International), and Car Parts, Inc. (Car Parts). At that time no International stock was issued. However, 1,000 shares of Car Parts stock were issued, 500 to Mr. Blendea and 500 to Mr. Mazur, who in turn assigned 250 shares to Steven Siegel, his nephew. There were changes in the corporate structure on September 30, 1971. On that day, the Mazur and Siegel shares of Car Parts stock were assigned back to Car Parts. Mr. Blendea then assigned his Car Parts shares to International, and a total of 1,000 shares of International stock was issued. Mr. Blendea received 490 shares, and the other 510 shares were issued to David Raitt, an attorney who had been involved in setting up the corporations. Mr. Raitt received two certificates, one for 490 shares and one for 20 shares. Sometime later, another corporation, Car Parts, Inc., of Pontiac (Pontiac), was formed as a wholly-owned subsidiary of International.

On October 12, 1971, a corporation called Motor City Leasing Company (Motor City) was formed. The stock arrangements were much like those as to International. Mr. Blendea received 490 shares and Mr. Raitt 510, again split into two certificates, one for 490 shares and one for 20 shares.

In April, 1974, Mr. Mazur commenced these three actions. In one, he sued individually and as a shareholder of International, naming as defendants International, Pontiac, Richard Blendea, and Mr. Blendea's wife, Eudora Blendea, who was also an officer of the corporations. In the second action Mr. Mazur sued individually and as a shareholder

of Motor City, naming Motor City and the Blendeas as defendants. The third action was brought by Mr. Mazur against Richard Blendea and still another corporation, E & A Warehouse, Limited.[1]

Among other defenses, the defendants claimed that Mr. Mazur was not a shareholder of the various corporations, and thus could not bring such actions. The essence of Mr. Mazur's claim to shareholder status was that 490 of the shares of International and Motor City issued to Mr. Raitt in fact belonged to him. The trial judge and the parties agreed that it would be most efficient to try the question of Mr. Mazur's shareholder status first. Despite the lengthy proceedings, the litigation has never progressed beyond this issue to the questions of corporate mismanagement.

The trial judge initially issued an opinion on October 14, 1975, finding that Mr. Mazur was not a shareholder. The Court of Appeals affirmed,[2] with Chief Judge DANHOF dissenting on the ground that the trial judge's findings were insufficient to permit appellate review. The plaintiff applied for leave to appeal to this Court, and we remanded to the trial court for further findings in accordance with Chief Judge DANHOF's dissenting opinion.[3] The trial judge issued a supplemental opinion, again concluding that Mr. Mazur was not a shareholder. The Court of Appeals affirmed in an

---

[1] There was virtually no evidence introduced at trial regarding the ownership of E & A Warehouse, and we will not further discuss that company. The trial judge's conclusion that Mr. Mazur was not an owner of E & A Warehouse was based on the finding that Mr. Mazur was not a shareholder of the Car Parts group of companies. Since we have directed a new trial as to that matter, the question of the ownership of E & A Warehouse will also have to be redetermined.

[2] *Mazur v Blendea*, 74 Mich App 467; 253 NW2d 801 (1977).

[3] 401 Mich 838 (1977).

unpublished per curiam opinion on September 11, 1979. The plaintiff brought the matter to this Court again, and we remanded to the Court of Appeals for reconsideration because that Court's second opinion had used the wrong standard of review.[4] On remand, a different panel of the Court of Appeals issued another unpublished per curiam opinion affirming the trial judge's decision.

The plaintiff has now filed another application for leave to appeal to this Court, raising, among other issues, a claim that the trial judge erred in his determination that the plaintiff was not a shareholder in the various corporations. We agree that the trial judge's findings are clearly erroneous and remand for a new trial.

## II

The trial judge's original opinion relied heavily on a document signed by Mr. Mazur that stated that Mr. Mazur held the 500 shares of Car Parts stock only as security for a debt from Car Parts to another corporation owned by Mr. Mazur. From this, and the inconsistencies in Mr. Mazur's explanation of the document, the judge drew the following conclusion regarding Mr. Mazur's ownership of the Car Parts "companies":

"This court concludes that Mr. Mazur has told too many different versions in the past and is unworthy of belief on the material issues involved in this case, and hence, this court concludes that Mr. Mazur was never an owner of any of the Car Parts companies * * *."

As to Mr. Mazur's interest in Motor City Leasing, the trial judge said:

---

[4] 409 Mich 858 (1980).

"With regard to Motor City Leasing Company, the record clearly establishes that Mr. Mazur never made any cash investment for the purchase of an interest in the Motor City Leasing Company, and further, that it now appears that Marvin Mazur and his related companies may be the largest debtor of Motor City Leasing Company. In conclusion, this court finds that Marvin Mazur is not a stockholder of Motor City Leasing Company * * *."

In remanding for further findings this Court agreed with Chief Judge DANHOF's dissenting opinion that these findings by the trial judge were inadequate to reconcile the substantial evidence supporting Mr. Mazur's shareholder status with the contrary result. Mr. Mazur and Mr. Raitt had both testified that the 490 shares of International and Motor City held by Mr. Raitt were actually the property of Mr. Mazur. The written agreement between them to that effect was introduced into evidence, and there was additional evidence tending to corroborate this version of the facts. Entries in the corporate minute books of both corporations referred to the issuance of the shares to Mr. Raitt, stating that he was taking them, "on behalf of himself and on behalf of an undisclosed party". Letters from Mr. Raitt to Mr. Blendea were introduced which included language such as the following:

"[Enclosed are:]

* * *

"2. An assignment of your right to subscribe to 510 shares of common stock of Car Parts International, Inc., which assignment is made in favor of myself. *Of course, you know it is subject to my agreement with Marvin.* This assignment should be executed by you in the space above your name.

* * *

"6. Stock certificates nos. 1 through 3; certificate no. 1 covering 490 shares issued to you, certificate no. 2 covering 490 shares issued to me, and certificate no. 3 covering 20 shares issued to me. *I am sure you understand the reason for the two shares being issued to me.* Please sign each certificate in the space designated for the president's signature, and your wife should execute each in the space designated for the secretary's signature." (Emphasis added.)

There was testimony from insurance agents, with supporting documentation, that in March, 1972, Messrs. Blendea and Mazur applied for life insurance policies, with Car Parts as the beneficiary, to fund a buy-sell agreement with stock redemption provisions. An insurance policy was actually issued on Mr. Mazur's life for this purpose. Finally, in early 1974, Mr. Raitt in fact transferred the certificates for 490 shares of each corporation to Mr. Mazur.

The trial judge's supplemental opinion dealt with some of this evidence. He noted that the buy-sell agreement relating to the insurance policies was never dated or signed. The judge said that he viewed the agreement regarding the shares between Messrs. Raitt and Mazur as suspicious because it was a "secret" agreement. The judge disregarded the eventual transfer of the shares from Mr. Raitt to Mr. Mazur, concluding that it was a "coerced" transaction because by that date the two had had a falling out and there was a lawsuit between them pending. The judge disregarded the letters from Mr. Raitt to Mr. Blendea on the ground that the purpose of the letters was simply to transmit a number of documents.

The judge concluded by re-emphasizing the importance of the document in which Mr. Mazur said that he held the Car Parts stock only for security,

and repeated his conclusion that Mr. Mazur was not worthy of belief.

The Court of Appeals panel in the latest decision summarized the lengthy proceedings in the case and noted the standard of review of findings in a non-jury trial:

"A finding of fact is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed'. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976)."

The Court concluded: "Because we are not left with such conviction, we find that the trial judge's findings were not clearly erroneous."

### III

While the evidence regarding the ownership of the International and Motor City stock cannot be characterized as uncontroverted, there was substantial evidence that Mr. Mazur was the owner of 490 shares of each corporation nominally held by Mr. Raitt. We conclude that the trial judge's two opinions do not provide a basis for rejecting the conclusion based on that evidence that Mr. Mazur was a shareholder.

The two principal matters on which the trial judge relies are insufficient to do so. The finding that Mr. Mazur is not worthy of belief might justify rejecting all of his testimony. However, even a finding of the total incredibility of a witness does not provide *affirmative evidence* of the contrary of his testimony.

Second, the trial judge's reliance on the docu-

ment in which Mr. Mazur said that his interest in Car Parts was for security only is an insufficient basis for drawing conclusions about the ownership of the 490 shares of *International* which are the real point in issue.[5]

In addition, the trial judge has not provided an adequate basis for rejecting the many items of evidence corroborating Mr. Mazur's claim of shareholder status. Neither opinion dealt with the entries in the minutes of the corporations as to the status of Mr. Raitt's holding of the shares, nor did the trial judge deal with the application for an insurance policy on the life of Mr. Mazur, which would have made sense only if he had an interest in the company. Several of the items of evidence are dealt with in the trial judge's opinions, but are not adequately explained. We fail to see the importance of the failure of Mr. Mazur to make a *cash* contribution to Motor City. Perhaps there is some chain of reasoning that could lead to the conclusion that because of that he did not own 490 of the shares held by Mr. Raitt, but the trial judge does not explain why that is so. Similarly, we do not understand the importance of the statement that the agreements between Messrs. Raitt and Mazur were "secret".[6] Finally, there is the fact that Mr. Raitt in fact transferred the stock certificates to Mr. Mazur. The trial judge's only reaction to this is that it was a coerced transaction after Mr.

[5] The trial judge did not make any distinctions between Car Parts, International, and Pontiac, despite the evidence that they were separate corporations.

[6] In addition, of course, there was substantial doubt as to whether the agreements were secret. Mr. Raitt's letters to Mr. Blendea, quoted above, reveal the existence of such agreements. The trial judge said that there was doubt about whether these letters were received, but it is clear from the documentary evidence that at least some of the instructions that Mr. Raitt gave to Mr. Blendea in the letters were carried out by the latter.

Mazur and Mr. Raitt were no longer friendly. Again, we do not understand the reasoning. If Messrs. Raitt and Mazur were no longer on friendly terms it would seem less likely that Mr. Raitt would turn over shares to Mr. Mazur that were not the latter's property.

## IV

This was a complicated case to begin with, and was not made any less so by the presentations by counsel during trial. We do not say that any individual item of evidence tending to support the plaintiff's position is controlling. As an appellate court reviewing the record, we are unable to resolve the factual issue of shareholder status in the face of the conflicting evidence. We are convinced, however, that the trial judge's opinions do not support his conclusion, and thus that those findings are clearly erroneous.

Given the substantial lapse of time since the trial of this case, we see no purpose to be served in still another remand for further findings, and rather order a new trial.

Accordingly, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we reverse the judgments of the Court of Appeals and the circuit court and remand to the Oakland Circuit Court for further proceedings in accordance with this opinion.

We do not retain jurisdiction.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.