### IN THE MATTER OF RIFFE

Docket No. 83171. Submitted October 10, 1985, at Lansing.—Decided December 16, 1985. Leave to appeal denied, 424 Mich 903.

The Saginaw Probate Court, Faye M. Harrison, J., pursuant to petitions brought by the Saginaw Valley Department of Social Services, ordered the termination of parental rights of the respondents, Charles L. Riffe and Shirley Riffe, to their minor sons, Charles L. Riffe, Jr., and David A. Riffe. Shirley Riffe appealed, alleging that the probate court used the incorrect standard for the burden of proof in determining that it had jurisdiction and that the petitioner did not show by clear and convincing evidence that the termination of parental rights was warranted. *Held:*

1. The burden of proof in the adjudicative phase of a hearing pursuant to a petition for the termination of parental rights, during which the probate court determines whether the child comes within the jurisdiction of the court, is that of a preponderance of the evidence. The probate court applied the proper standard in assuming jurisdiction.

2. The proper standard in the dispositional phase of the hearing, where the petition is based on an allegation of neglect, is whether the parent has been shown by clear and convincing evidence to be unfit and unable to become fit within a reasonable period of time. The probate court's decision that the petitioner had met its burden of presenting clear and convincing evidence of continuing neglect was not clearly erroneous.

Affirmed.

REFERENCES

Am Jur 2d, Appeal and Error § 136.

Am Jur 2d, Infants §§ 22, 211, 215, 219-224.

Am Jur 2d, Parent and Child §§ 5, 39, 40.

Validity of statute providing for termination of parental rights. 22 ALR4th 774.

Sexual abuse of child by parent as ground for termination of parent's right to child. 58 ALR3d 1074.

Physical abuse of child by parent as ground for termination of parent's right to child. 53 ALR3d 605.

1. COURTS — PROBATE COURTS — JURISDICTION — TERMINATION OF PARENTAL RIGHTS.

A probate court may not consider the termination of parental rights without first properly establishing jurisdiction over the minor child.

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — STANDARD OF PROOF.

A probate court, in ruling upon a petition to terminate parental rights, must apply the appropriate standard of proof at each . phase of the proceedings: in the adjudicative phase the standard is that of a preponderance of the evidence; in the dispositional phase the standard is that of clear and convincing evidence (JCR 1969, 8.3).

3. APPEAL — TERMINATION OF PARENTAL RIGHTS — STANDARD OF REVIEW.

The appropriate standard of review in cases involving termination of parental rights is whether the findings of the probate court are clearly erroneous; a finding is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.

4. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — NEGLECT.

The entry of an order taking permanent custody of a minor child because of neglect must be based upon testimony of such a nature as to establish or seriously threaten neglect of the child for the long-run future; the proper standard is whether the parent has been shown by clear and convincing evidence to be unfit and unable to become fit within a reasonable period of time (MCL 712A.19a; MSA 27.3178[598a]).

*Christopher S. Boyd,* Prosecuting Attorney, and *Christopher A. Picard,* Assistant Prosecuting Attorney, for petitioner.

*O'Farrell, Basner, Smith & Popielarz* (by *Donald T. Popielarz),* for respondent Shirley Riffe.

*John L. Denton,* for the minor children.

Before: J. H. Gillis, P.J., and Cynar and R. L. Evans,* JJ.

Cynar, J. Respondent Shirley Riffe appeals as of right from the probate court's order terminating her parental rights in her two minor sons pursuant to MCL 712A.19a(e); MSA 27.3178(598.19a)(e). Respondent Charles L. Riffe has not appealed the order terminating his parental rights. We affirm.

Respondents are the parents of two boys, David Allan Riffe, born in 1983, and Charles L. Riffe, Jr., born in 1982. On August 20, 1984, the Saginaw Valley Department of Social Services (DSS) filed a petition alleging that the probate court had jurisdiction over the minor child David pursuant to MCL 712A.2(b); MSA 27.3178(598.2)(b). On August 24, 1984, a petition was filed alleging that the probate court should exercise jurisdiction over both of the minor children of the parties, Charles, Jr., and David, for the following reasons:

"A. On 05-18-84 David Allan Riffe was diagnosed a 'failure to thrive' child.

"B. Said parents failed to bring David in for his scheduled doctor's appointment on 06-04-84 thereby jeopardizing his health and well-being and also failed to reschedule another appointment with the doctor.

"C. David's present height and weight measurements are below the chart for normal development.

"D. David's weight has severely dropped.

"E. On 08-24-84 Charles had a severe urine burn in which both the penis and testicles were red.

"F. On 05-25-80, a petition was filed in Saginaw County Probate Court by Kathryn Morley, alleging that Rosalie Marie McKinnon, said child of Shirley Riffe, was the victim of neglect and, on 07-16-80 Rosalie Marie McKinnon was adjudicated a temporary ward of

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

the Court under neglect jurisdiction and not returned to the care of the mother."

A temporary order of care was entered for David on September 5, 1984, and he was placed in foster care.

On October 8, 1984, a further petition was filed with respect to Charles, Jr., alleging:

"Said parents neglect to provide proper support and necessary care and said child is deprived of his emotional well-being.

"A. On 10-06-84 a physical confrontation occurred within the home over how said child should be disciplined, thereby placing the child in danger.

"B. On 10-06-84 said child was found wearing extremely dirty clothing and had very poor personal hygiene.

"Said home by reason of cruelty is an unfit place for said child to live in.

"C. On 10-06-84 Charles, Jr. was found to have old bruises and fresh welts on the buttocks, lower back, and upper thighs.

An order of temporary care was entered on October 8, 1984, placing Charles, Jr., in the care and custody of the Saginaw Child Receiving Home and he too was eventually placed in foster care.

A hearing was held in probate court on November 28, 1984, on the various petitions. A tentative agreement had been worked out between DSS and the respondents whereby the department would recommend that the probate court take temporary wardship of both children if respondent Shirley Riffe would enter into a parenting agreement with the department with the understanding that she would eventually be allowed to regain custody of the children if her situation improved. Respondent father pleaded no contest to the charges and indi-

cated he would give up any rights he had in the children. Respondent mother indicated, however, that some of the allegations in the petition were false and that she desired to go to trial. At that point, counsel for respondent Charles Riffe pointed out to the court that he had originally represented both parties. Separate counsel had been subsequently appointed for respondent Shirley Riffe because she and respondent Charles Riffe had separated. Counsel for respondent Charles Riffe was allowed to withdraw because of the potential conflict of interest. Therefore, because respondent Charles Riffe was without counsel, the hearing was adjourned to a later date.

The hearing resumed January 22, 1985, with new counsel representing Charles Riffe. As a preliminary matter, counsel for respondent Shirley Riffe moved to strike allegation (F) of the first petition which alleged that a daugther of Shirley Riffe, Rosalie Marie McKinnon, had been made a temporary ward of the court on July 16, 1980, under neglect jurisdiction and had not been returned to the care of her mother. The trial court ruled that allegations of prior neglect of other children of a parent are properly considered by a trial court in neglect cases. The court then proceeded with the adjudicative phase of the juvenile hearing.

Respondent Charles Riffe admitted allegations (A) through (F) of the August 24, 1984, petition and allegations (A) and (B) of the petition filed on November 8, 1984. However, as respondent Shirley Riffe continued to contest the truth of the allegations, several witnesses were called.

Dr. David Booth testified that David, diagnosed as a failure-to-thrive child, had been scheduled for an office visit with him on June 4, 1984, but the appointment had not been kept. When he finally

saw 10-month-old David on August 13, 1984, his height and weight were below the 5th percentile and he had received none of the appropriate immunizations normally administered to children. From August 13 to September 19, 1984, David was resident of the child receiving home. Dr. Booth saw David again on September 19, 1984. During the intervening period, David had gained two pounds, 10 ounces, and his weight was at or slightly above the 5th percentile and his height slightly below that percentile. When last seen by Dr. Booth on January 17, 1985, David's weight had increased to the 10th percentile and his height to the 25th percentile. The increases indicated to Dr. Booth that originally David's growth was not within the normal growth range for David, and that since his placement in a more nurturing environment of a foster home he had done extraordinarily well. Dr. Booth concluded that David's failure to thrive was the result of a poor home situation and that a combination of emotional and physical neglect had been responsible for David's failure to thrive.

Officer Cheryl Courtney, a member of the Saginaw Township Police Department, testified that on October 6, 1984, she and two other officers were dispatched to the Riffe home to handle a family dispute. Respondent Charles Riffe and his half-brother David Ozark had been in a fight, apparently because Ozark objected to the way respondent Charles had disciplined Charles, Jr., age 15 months. Both respondents were living in the home along with Joanne Edwards, respondent Charles Riffe's girlfriend, David Ozark, respondent Shirley Riffe's boyfriend, and Lea McKinnon, respondent Shirley Riffe's mother. Officer Courtney testified that Charles, Jr., was bruised and dirty, especially his feet, and all parties, including respondents,

agreed that Charles, Jr., would be better off if he were removed from the home. Officer Courtney took the child to Saginaw General Hospital for treatment and made arrangements with probate court officials to take Charles, Jr., to Saginaw County Child Receiving Home.

Dr. Clare Johnson testified that he treated Charles, Jr., at Saginaw General Hospital after he was brought to the hospital by police officers. He reported that Charles, Jr., had several fresh bruises across the buttocks area as well as some older bruises in the same area and on the top portion of the buttocks. The child was not "awfully dirty" when treated, but rather "medium dirty".

Rita Brown, a registered nurse at Saginaw County Child Receiving Home, examined Charles, Jr., on August 21, 1984, the day after he had been removed from the Riffe home. She reported that he had a diaper rash, a rash under his neck and chin, was below weight and length for his age, and had low hemoglobin. She also reported that Charles, Jr., gained three-quarters of a pound in two days and that when he left on August 29, the rash had cleared up.

Marilyn Schreiner, an employee at Mid-Michigan Child Care Center at the First Congregational Church, testified that David came to the center on July 23, 1984. At that time he was 14 months of age. He attended the center for less than a month, only once or twice each week. However, he was so dirty when he first arrived that she bathed him. On July 23, she sent a new bottle home for him since the one he had brought was "black" and the nipple was wrapped with hair, and "there was green slime all over the nipple". She occasionally saw Charles, Jr., who was kept cleaner than David. On August 24, 1984, she observed that David's genital area was covered with a urine burn "like

he had been in a Pamper maybe all weekend because he was so raw".

Respondent Shirley Riffe testified that she regularly fed David three meals a day and that she never beat him. However, she objected to the way respondent Charles Riffe disciplined Charles, Jr., although she was afraid to do anything about it for fear he would hit her and place her in the hospital, as he had done in the past. Neither of the parties worked, and their daily routine was to split up the care of the children, respondent Charles Riffe being primarily responsible for the care of Charles, Jr., and respondent Shirley Riffe being primarily responsible for the care of David. Respondent Shirley Riffe testified that the responsibility was split up so that respondent Charles Riffe had more responsibility for the care of Charles, Jr., because taking care of two children was too much for her to handle and because she was trying to learn how to care for the younger child.

David Ozark, the boyfriend of Shirley Riffe, testified that the mother took care of David and that respondent Charles Riffe cared for Charles, Jr. He testified that respondent Shirley Riffe fed the children three times a day when they had money for food. He related the details of the fight he and respondent Charles Riffe had had concerning respondent Charles Riffe's excessive disciplining of Charles, Jr., and that respondent Shirley Riffe was able to care for the two children.

Lea McKinnon testified that she lived with respondent Charles Riffe, his girlfriend Joanne Edwards, her daughter Shirley, and her two grandsons, and that respondent Shirley Riffe fed the children three times a day. A friend of the respondents, Christie Reinhard, also testified that respondent Shirley Riffe regularly fed the children.

Respondent Charles Riffe contested only allega-

tion (C) of the second petition. He testified that the old bruises on Charles, Jr.'s lower back and buttocks were the result of the child's attempting to "break dance" and falling on the floor or a toy. He and respondent Shirley Riffe had decided to divide the responsibility of the children between themselves because they might get divorced. He claimed that respondent Shirley Riffe did not regularly feed David three meals a day. He also indicated that the children would be better off if they were adopted.

After reviewing the testimony, the probate judge determined that the DSS had met its burden of proving each allegation, as amended, by a preponderance of the evidence, and that the allegations were sufficient to bring both David and Charles, Jr., within the jurisdiction of the probate court.

The dispositional phase of the proceeding was conducted February 6, 1985, approximately two weeks after the adjudicative phase. Laura Patterson, a psychologist with Saginaw Psychological Services, testified that respondent Shirley Riffe refused to submit to psychological testing, although it had been scheduled on two separate occasions. The first time, she failed to show up for her appointment, and the second time, she refused to submit to the testing unless she could consult with her lawyer after she found out that the test results could be used in court. Ms. Patterson attempted to contact respondent's attorney, but was unsuccessful.

John Szott, a protective services case worker for the DSS, testified that he initiated the investigation of the Riffe children after being informed by Dr. Booth's office that David Riffe had been diagnosed as a failure-to-thrive child. He recommended that both children be made permanent wards of the court and be placed for adoption. This differed

from his earlier recommendation that the children
be placed in a temporary wardship. He stated six
reasons for recommending that the children be
made permanent wards of the probate court: (1)
Over the course of his involvement with both
Charles and Shirley Riffe, there was little effort on
either parent's part to improve their situation or
to make an attempt to regain custody of the
children. (2) Visitations by the parents were very
irregular since August; visitations were scheduled,
but not kept, and there were long periods of time
with no visitation. (3) Both parents have limited
mental functioning. (4) The parents have failed to
cooperate in submitting to a psychological evalua-
tion so as to better assist the DSS. (5) The general
level of both parents' parenting skills is poor. (6)
Respondent father has indicated that he intends to
terminate his rights in both children and place
them for adoption and that both children are at an
ideal age where they could easily be placed on a
permanent basis.

Szott indicated he had changed his recommenda-
tion from temporary to permanent wardship be-
cause of the long pattern of neglect, because Shir-
ley Riffe had made very little effort to improve her
situation in spite of her recent signing up for
parenting classes, and because Shirley Riffe's visi-
tation with the children was very irregular. He
also indicated that the children were young and at
an easily-adoptable age and that he felt that adop-
tion was in the children's best interest. Szott testi-
fied that both respondents had been the victims of
neglect as children and that respondent Shirley
Riffe was also a victim of sexual abuse as a young
girl. The department had attempted to have both
respondents evaluated and had attempted to get
both parents to attend parenting classes, but to no
avail. The home respondents lived in at the time

the children were made temporary wards was dirty, cluttered, and disorganized. Szott described the apartment Shirley Riffe currently resided in with Ozark and her mother as not dirty, appropriately maintained, and not cluttered.

Respondent Shirley Riffe testified that she believed it would take about two weeks of classes for her to become a good parent.

All counsel stipulated that the probate court could take judicial notice of the probate file of Rosalie McKinnon, the daugther of respondent Shirley Riffe.

The court concluded in a lengthy opinion that there was a sufficient basis by clear and convincing evidence to support the termination of the respondents' parental rights and that the best interests of the children warrant and mandate termination.

The respondent (hereinafter, "respondent" refers to appellant Shirley Riffe) submits two issues for our consideration. First, the respondent contends that the probate court did not use the correct burden of proof standard in assuming jurisdiction. We disagree.

The probate court cannot consider termination of parental rights without first properly establishing jurisdiction. *In the Matter of Taurus F,* 415 Mich 512, 526; 330 NW2d 33 (1982).

Proceedings in juvenile court are of two general types: adjudicative and dispositional. JCR 1969, 8.1 and 8.3 [now MCR 5.908(A) and 5.908(C)] describe the two types of proceedings:

"(A) Adjudicative Phase. The adjudicative phase determines whether the child comes within the court's jurisdiction under MCLA 712A.1 *et seq.;* MSA 27.3178(598.1) *et seq.,* as alleged in the petition. There is a right to jury trial.

"(B) Dispositional Phase. The dispositional phase determines measures to be taken by the court with respect to the child and adults properly within its jurisdiction if the court has determined at the adjudicative phase that the child comes within the statute. There is no right to jury trial." JCR 1969 8.1. 403 Mich lxvi.

The admissibility of evidence and the standard of proof vary according to the type of proceeding involved.

"(A) Adjudicative Phase. Absent a valid plea in confession, only competent, relevant, and material evidence is admissible at the adjudicative phase. In a case involving an offense by a child, the rules of evidence for a criminal proceeding and the standard of proof beyond a reasonable doubt apply. In a case involving an offense against a child, the rules of evidence for civil proceeding and *the standard of proof by a preponderance of the evidence* apply. '
"(B) Dispositional Phase. In the dispositional phase only relevant and material evidence may be considered. *Clear and convincing evidence is required to terminate parental rights."* JCR 1969, 8.3. 403 Mich lxvii. (Emphasis added.)

The probate court assumed jurisdiction after finding by a preponderance of the evidence that the material allegations in the petitions were true. It is argued that reliance on the preponderance of the evidence standard was error. Respondent, relying on *In the Matter of Kurzawa,* 95 Mich App 346; 290 NW2d 431 (1980), contends that the probate court could only assume jurisdiction using a "clear and convincing evidence" standard. The *Kurzawa* Court stated that "[t]he state carries the burden of proving the need for the court's exercising jurisdiction by clear and convincing evidence". 95 Mich App 354. As authority, the *Kurzawa* Court cited *In the Matter of LaFlure,* 48 Mich App

377; 210 NW2d 482 (1973), *lv den* 390 Mich 814 (1973), and JCR 1969, 8.3(B) [now MCR 5.908(C)].

We believe that this Court's reliance on *In the Matter of LaFlure* and JCR 8.3(B) in *Kurzawa,* for the proposition that the state carries the burden of proving the need for the court's exercising jurisdiction by clear and convincing evidence, was incorrect. The court rule clearly states that during the adjudicative phase the court determines whether or not the child comes within the court's jurisdiction, and that the burden of proof is that of a preponderance of the evidence. A close reading of *In the Matter of LaFlure* reveals that in that case this Court was concerned with the dispositional phase, in which the court rule clearly provides that the state must prove by clear and convincing evidence that termination is warranted. See also *In the Matter of Campbell,* 129 Mich App 780, 785; 342 NW2d 607 (1983).

It is also noted that in *Kurzawa* the parents of the minor child initially sought the resources available through DSS to help their problem child. The factual allegations by the Kurzawas in their initial petition referred to the delinquency provisions of the probate code and not the neglect portions. Jurisdiction under the statute must be based on evidence of parental neglect and not on delinquency. Neither the initial nor later petitions alleged any neglect by the Kurzawas. Since the *Kurzawa* Court held that the probate court erred in assuming jurisdiction and therefore the proceedings were void *ab initio,* determining the burden of proof standard in exercising jurisdiction to be clear and convincing evidence was unnecessary in that case.

The respondent also contends that the petitioner did not prove by clear and convincing evidence

that the termination of parental rights was warranted. We disagree.

The appropriate standard of review in cases involving termination of parental rights is whether the findings of the probate court are clearly erroneous. *In re Cornet,* 422 Mich 274, 277; 373 NW2d 536 (1985). A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Mazur v Blendea,* 413 Mich 540, 547; 321 NW2d 376 (1982); *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

The statute pursuant to which the trial court terminated respondent's parental rights is MCL 712A.19a(e); MSA 27.3178(598.19a)(e). Section 19a(e) reads in relevant part as follows:

"Sec. 19a. Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:

\* \* \*

"(e) The parent or guardian is unable to provide a fit home for the child by reason of neglect."

The state bears the burden of proving by clear and convincing evidence that termination of parental rights is warranted. JCR 1969, 8.3(B) [now MCR 5.908(C)(2)], *In the Matter of Bidwell,* 129 Mich App 499, 504; 342 NW2d 82 (1983); *In the Matter of LaFlure, supra.*

Although the amount of neglect necessary to justify termination of parental rights under section 19a(e) is not capable of precise or exact defini-

tion, the entry of an order taking permanent custody due to neglect must be based upon testimony of such a nature as to establish or seriously threaten neglect of the child for the long-run future. *Fritts v Krugh,* 354 Mich 97, 114; 92 NW2d 604 (1958); *In the Matter of Bidwell, supra,* p 505. The proper standard is whether the parent has been shown by clear and convincing evidence to be unfit and unable to become fit within a reasonable period of time. MCL 712A.19a; MSA 27.3178(598a); *In the Matter of Atkins,* 112 Mich App 528, 541; 316 NW2d 477 (1982), *lv den* 413 Mich 912 (1982).

After reviewing the record of the instant proceeding, we are not left with a definite and firm conviction that the trial court made a mistake in terminating the parental rights of respondent Shirley Riffe. The minor child David was removed from the home after being diagnosed by a physician as being a failure-to-thrive child. The minor child Charles, Jr., was removed from the home as a result of a police call to the family home wherein his father and mother's boyfriend were engaged in a fistfight over the father's disciplining of the child. At that point Charles, Jr., was bruised and dirty and was removed from the home.

Another child of respondent Shirley Riffe, Rosalie McKinnon, had been made a temporary ward of the court in 1980. At that time, respondent Shirley Riffe submitted herself to psychological evaluation, and attempts were made at counseling to improve respondent's parenting skills. Eventually, however, the DSS recommended that Rosalie be placed with the father. In 1982, the child was discharged from probate jurisdiction, with permanent custody in the father's care. With respect to the father's care of Rosalie, the psychological report indicated that respondent "will most likely

always be a minimal parent, without mental ability to change".

When difficulties arose with the care of Charles, Jr., and David, the DSS provided respondent with the opportunity to submit to psychological testing and counseling. Respondent Shirley Riffe refused to submit to psychological testing and signed up for parenting classes only a week before the final dispositional hearing was scheduled. When asked how long she felt she should attend parenting classes in order to become a fit parent, she responded it would take her "about two weeks". She also testified that the parties had split up the care of the children partially because taking care of two children was too much for her to handle.

The trial court found that the mother has a long history of neglectful behavior toward her children and that she has done very little to improve her parenting skills. We believe that the state met its burden of proving by clear and convincing evidence that the children were subjects of continuing neglect and that there is every indication that the pattern of neglectful behavior will continue and will not be remedied at any time in the foreseeable future. Therefore, the decision of the trial court that the children must be removed from the parental home and that respondent's parental rights be terminated permanently is not clearly erroneous.

Affirmed.