*In re* MILLER

Docket No. 98374. Submitted October 22, 1987, at Lansing. Decided March 8, 1988. Leave to appeal granted, 430 Mich —.

Ryan K. D. Miller was born out of wedlock in August, 1982, to Sherry Barnhill, with whom he lived until August, 1983, when he was placed in the care of his maternal grandmother by the Ingham Probate Court pursuant to a neglect petition. Ryan was thereafter placed in foster care with the parents of Glen Miller, his father. In June, 1984, Glen Miller and Sherry Barnhill married, although the marriage has been tumultuous and by the time of the 1986 petition to terminate parental rights a divorce action had been filed by Glen Miller. Following an extensive evidentiary hearing, the probate court, Donald S. Owens, J., terminated the parental rights of both parents, holding that neither parent established a reasonable probability that he or she would be able to reestablish a proper home for the child within the following twelve months. Glen Miller appealed.

The Court of Appeals *held:*

While the probate court was faced with a difficult question, the probate court's order terminating the parental rights is not supported by clear and convincing evidence that termination was warranted.

Reversed and remanded.

M. J. KELLY, P.J., dissented. He would hold that there was clear and convincing evidence supporting the probate court's determination that termination of parental rights was proper. He would affirm.

1. PARENT AND CHILD — CHILD CUSTODY — PUBLIC POLICY.

It is the policy of the State of Michigan to keep children with

REFERENCES

Am Jur 2d, Parent and Child §§ 7, 11, 28, 34.

Constitutional principles applicable to award or modification of custody of child—Supreme Court cases. 80 L Ed 2d 886.

Validity of state statute providing for termination of parental rights. 22 ALR4th 774.

See also the annotations in the Index to Annotations under Custody and Support of Children.

their natural parents wherever possible (MCL 712A.1; MSA 27.317[598.1]).

2. Appeal — Termination of Parental Rights — Standard of Review.

The appropriate standard of review in cases involving termination of parental rights is whether the findings of the probate court are clearly erroneous; a finding is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.

*Donald E. Martin,* Prosecuting Attorney, and *Robert B. Ebersole,* Chief Appellate Attorney, for petitioner.

*William T. King,* for Glenn Miller.

Before: M. J. Kelly, P.J., and Doctoroff and J. T. Corden,* JJ.

Doctoroff, J. Glen Miller (hereinafter respondent) appeals as of right from an Ingham County Probate Court order permanently terminating his parental rights in his son, Ryan Kyle Dean Miller. MCL 600.861(c)(ii); MSA 27A.861(c)(ii).[1] We reverse.

The minor child, Ryan, was born in August, 1982. At that time, his parents were unmarried and Ryan lived with his mother, Sherry.

In August, 1983, a neglect petition was filed against Sherry on the basis of information reported by Sherry's mother. Ryan's first three months of foster care were with Sherry's mother. The rest of his foster care was with his paternal grandparents.

In June, 1984, respondent and Sherry married. The marriage was tumultuous, and, at the time of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The rights of respondent's wife, Sherry Miller, were terminated at the same proceeding. She has not appealed from the order.

the instant permanent termination proceedings, respondent had filed for divorce.

The probate court based its decision to terminate parental rights on MCL 712A.19a(f); MSA 27.3178(598.19a)(f), which provides:

> Where a child remains in foster care in the temporary custody of the court following the initial hearing provided by section 19, the court may make a final determination and order placing the child in the permanent custody of the court, if it finds any of the following:
>
>         \*     \*     \*
>
> (f) The child has been in foster care in the temporary custody of the court on the basis of a neglect petition for a period of at least 2 years and upon rehearing the parents fail to establish a reasonable probability that they will be able to reestablish a proper home for the child within the following 12 months.

Respondent's claim of error is that the evidence did not clearly and convincingly establish that termination of his parental rights was warranted. MCR 5.908(C)(2). See, also, *In re Bidwell,* 129 Mich App 499, 504; 342 NW2d 82 (1983); *In re LaFlure,* 48 Mich App 377, 386; 210 NW2d 482 (1973), lv den 390 Mich 814 (1973).

It is the policy of this state to keep children with their natural parents whenever possible. MCL 712A.1; MSA 27.3178(598.1). *In re Brown,* 139 Mich App 17, 20; 360 NW2d 327 (1984). In termination matters, the standard for proceedings under § 19a is whether the parent has been shown by clear and convincing evidence to be unfit and unable to become fit within a reasonable period of time. *In re Atkins,* 112 Mich App 528, 541; 316 NW2d 472 (1982), lv den 413 Mich 912 (1982). The burden of going forward with evidence resides

with the parents. *In re Kantola,* 139 Mich App 23, 28; 361 NW2d 20 (1984).

In reviewing a trial court's findings with respect to the termination of parental rights, this Court employs the clearly erroneous standard of review. *In re Irving,* 134 Mich App 678, 679-680; 352 NW2d 295 (1984). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *In re Cornet,* 422 Mich 274, 278; 373 NW2d 536 (1985); *In re Riffe,* 147 Mich App 658, 671; 382 NW2d 842 (1985), lv den 424 Mich 904 (1986).

After reviewing the record of the instant proceeding, we are left with the definite and firm conviction that a mistake was made when respondent's parental rights were terminated.

Respondent proposed a plan whereby he hoped to establish a proper home for Ryan, who the court found had never lived with him other than for brief visits. The plan was that respondent would change work shifts so that he could be home with Ryan during the evenings.[2] He intended to play and watch television with Ryan and also do housework during those times. Although the trial court found that it was speculative as to who would be raising Ryan, respondent indicated that he would ask a neighbor to care for Ryan during the day while he worked. In the fall of 1987, Ryan was to begin school, and respondent would be able to be with him when the school day ended. The court found that respondent had a two-bedroom apartment and a steady full-time job with a good work record, had consistently paid for Ryan's support,

---

[2] Respondent had previously changed shifts so that he could work during the evenings and be available for court proceedings during the day.

had demonstrated good compliance with court orders, had paid for and attended therapy sessions, and had attended parenting classes and an alcohol education program. Nonetheless, the court found that "there is not evidence that he [respondent] could provide adequately emotionally for Ryan" and that there was no reasonable probability that respondent could provide a proper home for Ryan within the next twelve months. In so finding, the trial court seemed to have reached its decision to terminate respondent's parental rights by placing great emphasis on two occurrences: a 1984 incident in which respondent disciplined Ryan, and a period from approximately August, 1985, to February, 1986, during which neither respondent nor his wife requested visitation with Ryan.

In 1984, after respondent finished parenting classes for which he received straight A's, he disciplined Ryan during a visit. The child apparently defecated in his pants, whereupon respondent picked Ryan up by his hair and rubbed the feces on him. The probate court found that respondent had not incorporated what he had learned from the parenting classes into his treatment of Ryan.

Case worker Doris Munro-Sneider testified at the termination proceedings that home visitation was not discontinued after this incident. She continued to meet with respondent and his wife, who were able to verbalize their feelings and vent their frustrations. They could see alternatives to the discipline and were remorseful. Respondent told Munro-Sneider that he had been similarly treated as a child and that his treatment of his son had been done without thinking.

The record is replete with evidence of discord between respondent and his parents, who even requested that visitation between their son and Ryan at their home be discontinued. Although

respondent's therapist, Mary Alice Collins, testified that his relationship with his parents had an impact on what he had done over the last three years, including reliance on disciplining techniques he learned from his parents, she stated that he is making progress. He was identifying his anger, looking at it and adapting ways of dealing with it. Contrary to the probate court's assertion that there was no evidence that respondent could provide emotional support for his son, Collins had testified that respondent could be an appropriate and effective parent to his son within twelve months with a little more therapy and that he could provide care, financial and emotional support and love and would take an interest in his son's development.

In addition to emphasizing the disciplining incident, the probate court also emphasized that there had been a period between approximately August, 1985, and February, 1986, during which respondent and his wife did not ask for visitation with Ryan. In approximately July, 1985, respondent and his wife had an altercation. In August, 1985, assault charges were filed against respondent, at which point respondent and his wife were informed that visitation with Ryan would cease. Munro-Sneider retrieved Ryan from his parents at that point. Evidence showed that respondent and his wife thought that, when Munro-Sneider told them that the filing of the charges meant the end of the visits for a while, she meant that there would be no further visits until the matter was ended. After several months, the charges against respondent were dismissed. Respondent's failure to request visitation can be construed as naivete rather than a lack of caring about Ryan.

We agree with the probate court that this is a sad case and that Ryan needs stability in his life.

But the evidence shows that most of the instability
and discord was brought about because of the poor
relationship that existed between Ryan's parents,
which was aggravated by a number of factors,
including the fact that Sherry regularly left home
for up to six weeks at a time. Munro-Sneider even
testified that, on two occasions, Ryan came close to
being reunited with his parents and that the rea-
son he was not so reunited was not the fault of
either parent individually, but rather was the
result of the fact that his parents could not inter-
act well together.

Based upon the entire evidence, we are left with
the definite and firm conviction that a mistake has
been made. The probate court faced a very difficult
matter. Nonetheless, we are persuaded that its
order terminating respondent's parental rights is
not supported by clear and convincing evidence
that termination was warranted. Accordingly, we
reverse and remand this case.

We note in passing that respondent mother,
Sherry Miller, who is not a party to this appeal,
appeared at oral argument in this case and noti-
fied this Court that she had never received notice
of her appellate rights. On remand, the probate
court is to determine whether Sherry Miller re-
ceived such notice.

Reversed and remanded.

J. T. CORDEN, J., concurred.

M. J. KELLY, P.J. *(dissenting)*. I would affirm. I
find there was clear and convincing evidence that
respondent's parental rights should be terminated
under MCL 712A.19a(f); MSA 27.3178(598.19a)(f).
Respondent-appellant had a history of difficulty
with his own parents and had abused this child
dramatically on occasions. The social worker testi-

fied that on August 10, 1984, she received an emergency call from the mother of the child. The mother informed her that respondent had ignored the child when the child told him that he had to go to the bathroom. The mother discovered respondent holding the child in the air by his hair. The child had messed his pants, and respondent had angrily rubbed feces on the child's face. It would take a lot more than a few good grades in parenting classes to erase the spectacle of that degrading brutality.

There was ample testimony of alcohol abuse and physical assault and battery by the respondent upon the mother. There were extensive periods of time when visitation was minimal or totally neglected. The trial judge was fearful that respondent would merely repeat his past behavior and would neglect the child to go fishing or out drinking with his friends. The judge was also concerned about medical testimony concerning the child's emotional problems and he questioned whether a babysitter would be able to adequately deal with these emotional problems. I find that the state presented clear and convincing evidence that termination of parental rights was warranted and that the trial judge's decision to terminate respondent's parental rights under subsection (f) of § 19a was not clearly erroneous.

I would affirm.