# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A J COSME, Minor.

UNPUBLISHED
June 12, 2018

No. 340919
Monroe Circuit Court
Family Division
LC No. 17-024107-NA

Before: SWARTZLE, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to his minor daughter, AJC, under MCL 712A.19b(3)(b)(*i*) (physical or sexual abuse of the child or a sibling), (h) (child deprived of normal home in excess of two years due to parent's imprisonment), (j) (reasonable likelihood of harm if returned), and (k) (abuse of the child or a sibling). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2017, respondent and his then-wife, Jenny Marie Cosme Whitehead, lived together with their 5-year-old daughter, AJC, and Whitehead's 12-year-old daughter, AC. In February 2017, AC revealed to Whitehead that respondent had been sexually abusing her for two years. Respondent was charged with second-degree criminal sexual conduct (CSC-II), MCL 750.520c, in two counties. He pleaded guilty to one count of CSC-II in each county, and was sentenced separately to 38 months to 15 years in prison for one conviction and 3 to 15 years' imprisonment for the other. After respondent was charged but before he was convicted, petitioner (the Department of Health and Human Services) filed a petition seeking to terminate respondent's parental rights to AJC based on respondent's admission to a Children's Protective Services (CPS) investigator that he had sexually abused AC, as well as his previous physical abuse of AC, one incident of which had resulted in a conviction for fourth-degree child abuse. Whitehead was not a respondent to the petition and AJC remained in Whitehead's care after respondent was convicted and incarcerated. Whitehead ultimately divorced respondent.

In October 2017, the trial court accepted a plea agreement under which respondent admitted to the allegation in the petition that he had previously pleaded guilty to one count of CSC-II in Monroe County regarding AC. The petition was later amended to reflect that respondent had also pleaded guilty to one count of CSC-II in Wayne County. On the basis of respondent's plea, the trial court took jurisdiction over AC. Respondent stipulated that statutory

-1-

grounds for termination were established, and agreed to a bench trial solely on the issue of whether termination was in AJC's best interests.

Respondent testified at the termination hearing that he was participating in various treatment programs while incarcerated, that he and AJC were bonded, and that he could maintain his bond with her by communicating with her while in prison. Whitehead acknowledged that AJC and respondent shared a bond. Respondent admitted that he had failed to undergo a psychiatric evaluation and had failed to develop a "relapse prevention plan" for substance abuse,[1] domestic violence, or sexual abuse.

Petitioner sought termination of respondent's parental rights to AJC under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (h), (j), (k)(*ii*), and (k)(*ix*). The trial court determined that clear and convincing evidence existed sufficient to terminate respondent's parental rights under the statutory grounds outlined by MCL 712A.19b(3)(b)(*i*), (h), (j), and (k). The trial court further held that termination was in AJC's best interests, citing evidence of respondent's diagnoses of bipolar depression and sex addiction, respondent's failure to address his sex addiction with a relapse plan or recommended treatment group, respondent's history of violent behavior toward AC and his former spouses, AJC's need for permanency and stability given her age, AJC's relationship with AC, and the acts of criminal sexual conduct perpetrated by respondent. Accordingly, the trial court entered an order terminating respondent's parental rights to AJC.

This appeal followed. Respondent does not contest the existence of statutory grounds for termination under MCL 712A.19b(3), but only challenges the trial court's best-interest determination.

## II. STANDARD OF REVIEW

This Court reviews for clear error the trial court's determination regarding a child's best interests. *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding is 'clearly erroneous' if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake." *In re Riffe*, 147 Mich App 658, 671; 382 NW2d 842 (1985). That is, the reviewing court must find the trial court's decision "more than just maybe or probably wrong." *Trejo*, 462 Mich at 356.

## III. ANALYSIS

Respondent argues that the trial court erred by determining that termination of his parental rights was in AJC's best interests. We disagree. Respondent asserts that the trial court failed to adequately consider the bond shared between respondent and AJC before holding that termination was in AJC's best interests. But the strength of the familial bond is only one factor among many that the trial court may consider in analyzing the best interests of the child. *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). Other factors that justify termination

---

[1] Respondent admitted to having had a problem with cocaine use, but claimed that it was no longer an issue.

might outweigh the bond between parent and child, such as the child's need for safety. *Id*. Here, the trial court expressly acknowledged the bond shared by respondent and AJC, then measured it against several factors weighing in favor of termination, including respondent's diagnosed mental health issues (for which he was not then taking any medication), his failure to address various issues such as sexual addiction as recommended by treatment professionals, his history of domestic violence and child abuse, AJC's need for permanency and stability (which might be challenged by respondent once he is released from prison), AJC's relationship with AC, and the criminal sexual acts committed against AC. We are not definitely and firmly convinced that the trial court made a mistake when it terminated respondent's rights notwithstanding the bond between respondent and AJC. *Id*.; *Riffe*, 147 Mich App at 671.

Respondent also asserts that trial court did not consider whether AJC's placement with Whitehead would be unstable or impermanent. We disagree. In the first instance, the trial court was not required to give weight to AJC's placement with her mother as a "relative placement," see *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012), because Whitehead was not a "relative" for the purposes of MCL 712A.19a, *In re Schadler*, 315 Mich App 406, 412-413; 890 NW2d 676 (2016). And the trial court did consider AJC's placement with Whitehead. Both AJC's lawyer-guardian ad litem (LGAL) and the CPS investigator assigned to this case testified that AJC's health, safety, and welfare were adequately served in her placement with Whitehead. The trial court expressly considered AJC's need for permanency and stability given her age, and indicated that those interests would be better protected if she were allowed to remain in Whitehead's care without the possibility that her stable environment would be challenged by respondent once he is released from prison. The trial court did not clearly err by doing so. *Trejo*, 462 Mich at 356.

Finally, respondent argues that the trial court's order terminating his parental rights was an unnecessary "preemptive strike" against the possibility that he might abuse AJC in the future. Respondent argues that he could have a relationship with AJC while he is incarcerated and presumably incapable of offending against her. Respondent further argues that his desire to reunite with AJC should have weighed against termination, though the trial court weighed it in favor of termination, because it was fearful of the potential impact on AJC's permanence and stability after respondent's release. We disagree. The CPS investigator expressly noted her fear that if respondent's parental rights were not terminated, he would later direct assaultive or abusive behavior toward AJC. And, as stated, the trial court observed that respondent minimized or ignored his mental health issues and potential for further sex offenses. Therefore, the trial court's concern that respondent posed a risk of reoffending was not unfounded. Further, the trial court noted that it was not in AJC's best interests to put her permanence and stability at risk by allowing respondent the chance to challenge AJC's placement after years in prison. While a respondent's desire to reunite with his or her child may ordinarily be weighed against termination, in this context—an incarcerated respondent with a history of mental illness, sex addiction, violence, and criminal sexual conduct—the trial court did not clearly err by concluding that it was not in AJC's best interests to force her to wait several years for her father to be released from prison before granting her the permanency and stability of placement with her mother. *White*, 303 Mich App at 714.

The trial court did not clearly err when it determined that termination of respondent's parental rights was in AJC's best interests. *Trejo*, 462 Mich at 356.

Affirmed.

/s/ Brock A. Swartzle
/s/ Douglas B. Shapiro
/s/ Mark T. Boonstra